## Case No. 16,886.

### VARNUM v. BELLAMY.

[4 McLean, 87.] [1]

Circuit Court, D. Indiana. May Term, 1846.

PROMISSORY NOTES — INDORSEMENT — CONSIDERATION—ATTORNEY FOR COLLECTION—RELEASE OF INDORSER — GIVING TIME.

1. W and B executed their note for eight hundred and ninety-nine and fifty-three hundredths

[1] [Reported by Hon. John McLean, Circuit Justice.]

dollars to the order of B, and negotiable at a chartered bank in Indiana. B indorsed it for the accommodation of the makers in blank. and they transferred it to V, in payment of a preexisting debt due from them to him. *Held*, that in a suit by V against B on his indorsement, it was no defense to the suit that the indorsement was made without consideration, although V knew it when he received the note.

2. The pre-existing debt due to the holder of the note from the makers, was a good consideration for its transfer.

3. An attorney who receives a note for collection, can not, without special instructions, make any agreement which will bind his principal, by which the indorser could be released from his liability.

[Cited in brief in Moulton v. Bowker, 115 Mass. 36; Rounsaville v. Hazen, 33 Kan. 74, 5 Pac. 422.]

4. Forbearance to sue the makers of a negotiable note will not release the indorser, and unless an agreement for delay is such as will. for a time. tie up the creditor's right of action. it is nugatory.

5. The indulgence which will release an indorser of negotiable paper, must not only be given upon a good consideration, but it must be for some limited and definite time, within which the creditor's right of action is suspended.

6. The payment of a part of the debt, and accepting claims to be applied when collected in further payment, under a verbal agreement not to sue, constitute no legal consideration for the promise of forbearance.

At law.

Mr. Judah, for plaintiff.
Mr. Cooms, for defendant.

HUNTINGTON, District Judge. Assumpsit by Varnum, the holder, against Bellamy, the indorser, of a promissory note for eight hundred and ninety-nine dollars and fifty-three cents, dated Nov. 23rd, 1840, payable and negotiable ninety days from date, at the Fort Wayne Branch of the State Bank of Indiana. The note is made by Wright and Dubois, and payable to the order of Lyman G. Bellamy, who indorsed it in blank. Since the commencement of the suit, Bellamy has died, and the action is now against his administratrix, Caroline Bellamy. The declaration is in the usual form. The only pleas on file are the general issue, and plene administravit. As no proof has been introduced applicable to the last plea, that part of the case need not be again referred to.

The first ground of defense insisted on is, that the note in question was given solely as an accommodation note, to be discounted at the Fort Wayne Bank—that the indorsement was made with that understanding and without consideration, and that it was delivered to the plaintiff by the makers, in violation of that understanding, and thus diverted from its original purpose. This matter being in avoidance of the note, should have been specially pleaded, but no such plea is found among the papers. Inasmuch, however, as the question was considered on the trial and made the subject of an elaborate

written argument by defendant's counsel, as well as referred to in the testimony, I have apprehended that perhaps such a plea had been filed and mislaid. I will, therefore, briefly consider the question as if such an issue had been made. The note in question is in the usual form of notes offered for discount in bank, with the addition of the words "with current rate of exchange." The following is an exact copy: "$899.53. Fort Wayne, Nov. 23rd, 1840. Ninety days after date, we promise to pay to the order of L. G. Bellamy, eight hundred ninety-nine and fifty-three hundredths dollars, negotiable and payable at the Branch Bank at Fort Wayne, with current rate of exchange. Wright & Dubois." It will be perceived, that under the statute which governed it at that time (Rev. St. 1838, p. 119), this paper being made payable, etc., at a chartered bank, was placed on the footing of inland bills of exchange. The statute of 1843, has made some change in the law in this particular, which it is not now necessary to examine. This, then, being the character of the instrument, it is invested with all the attributes of commercial paper, and governed by the law merchant. It appears, from the testimony, that the note was delivered to the plaintiff, by the makers, before it became due, in payment of a pre-existing debt of that amount—that the plaintiff, or some one for him, placed it in bank for discount—that the bank refused to discount it—that when it fell due, it was regularly protested, for non-payment, of which Bellamy had notice, and that it was withdrawn from the bank by the plaintiff, and placed in the hands of Thomas Johnson, an attorney of Fort Wayne, for collection. It seems that where a third person becomes the holder of a bill or note, negotiable by the law merchant, which had been obtained without consideration, if it can be proved that he had notice of the transaction between the original parties, and gave no value for the note or bill, he would be affected by every thing which would affect the first holder. Munson v. Cheesborough, 6 Blackf. 17. This, however, is not such a case. The pre-existing debt, due from the makers to the plaintiff, was a good consideration for the transfer. It is a case in which the indorser lent his name and credit to the makers for their benefit, and in which the plaintiff is a bona fide holder for value, and though the latter took the note with a full knowledge that the indorsement was made without consideration, it is not a circumstance which can relieve the indorser from liability. Niles v. Porter, 6 Blackf. 44, and cases there cited of Smith v. Knox, 3 Esp. 46; Charles v. Marsden, 1 Taunt. 224; Adams v. Gregg, 2 Starkie, 531. "These decisions (says the supreme court of Indiana, in the case first cited) are founded on the policy of the law in favor of commerce, which forbids a person to give credit and circulation to negotiable paper by his name, and then object to a fair holder for a valuable consideration, that his signature was without consideration." The same principle which applies to the acceptor of a bill, applies to the indorser of a promissory note for the accommodation of the maker. Smith v. Becket, 13 East, 187; Brown v. Mott, 7 Johns. 361. There is another circumstance in this case, however, which repels the pretense that this note was not executed and indorsed for the very purpose to which it was applied. The plaintiff was, and still is a resident of New York. The note in question contains a promise. not usual certainly in notes intended solely as accommodation paper for discount, to cover the exchange between Fort Wayne and New York.

The second ground of defense is, that Johnson, the attorney of the plaintiff, when he received the note for collection, entered into an agreement with the makers to receive from them certain claims which they. held upon other persons, which, when collected, were to be applied upon this note; that Johnson was to have five per cent. for collecting them; and that they were to pay also a small amount of money, which was to be applied on the note; and that, in consideration thereof, Johnson agreed not to bring suit, and did retain the note in his hands for about the period of two years after it fell due. The only evidence in the cause (except the proof of protest, etc.) is furnished by the depositions of Dubois, one of the makers of the note. It seems that he has been examined on three several occasions, and the last time was cross-examined by the plaintiff's counsel. The witness evidently shows a strong bias in favor of the indorser, and there are some discrepancies in his statement, not compatible with the utmost candor. It seems, from his last deposition, that some time after the note fell due, and was protested for non-payment, it was placed in the hands of Thomas Johnson, an attorney of Fort Wayne, Indiana, where the makers and indorser resided, for collection; that when called on for payment, the witness, one of the makers, told the attorney that they were unable to pay it, but that if he would take a small amount of money, and some claims which they held against other persons, they would turn them out, and allow Johnson five per cent. for collecting them—the money so to be paid, and the claims, when collected, to be applied in payment of the note. It seems that Johnson acquiesced in the proposition; that a small sum of money was paid, and that claims to a considerable amount were placed in his hands. The witness says, also, that "the understanding was, that he (Johnson, the attorney,) was not to sue on the note," and that he retained it in his possession without suit for some two years.

There are two questions which arise upon this state of facts. The first is, was the attorney authorized to make such an arrangement as he did make? It is said, in the case of Miller v. Edmonston, decided by the supreme court of Indiana, November 2d. 1846, but not yet reported [8 Blackf. 291], that "when a demand is placed in the hands of an attorney at law for collection, without any special instructions, the authority conferred upon, and the duty assumed by him, is to use due diligence ·to collect the debt by suit or otherwise; he has no authority to compromise with the debtor, and can not bind his principal by any arrangement short of an actual collection of the debt." In this case it does not appear that Johnson, the attorney, had any "special instructions" authorizing him to make such an agreement. It is true the witness swears that Johnson told him "he was authorized to take claims on the note," but he no where states that Johnson informed him that he had authority to extend the time of payment. The agreement, therefore, was nugatory, unless sanctioned by the principal. Whether it was competent for the defendant to prove the declarations of the attorney, in reference to his authority, it is unnecessary to decide.

The other question is, was the forbearing to sue the makers of the note, as above stated, such an indulgence as will release the indorser? I think that it was not, even supposing the agreement to have been made upon sufficient authority. "The agreement for delay must be such an one as for a time will tie up the creditor's right of action." Braman v. Howk, 1 Blackf. 392, and note 2. The indulgence which will release an indorser, must not only be given upon a good consideration, but it must be for some limited and definite time, within which the creditor's right of action is suspended. Chit. Bills (9th Am. Ed.) 446. In this case, both these requisites are wanting. The payment of a part of the debt, after the whole became due, and the transfer of claims, to be applied when collected, in further payment of the note, constituted no legal consideration for the promise of forbearance. Berry v. Bates, 2 Blackf. 118. No time was fixed within which the attorney agreed "not to sue." It was a mere verbal promise, founded upon no sufficient consideration, and might at any time have been disregarded.

These views do not in any manner conflict with the principle laid down in the case of Bank of U. S. v. Hatch [Case No. 918], afterward reviewed by the supreme court of the United States (6 Pet. [31 U. S.] 250). Judgment for plaintiff de bonis testatoris.