Seawexi, Judge,
 

 delivered the opinion of the Court;
 

 The main question in this case is, whether John Haslin, by the deed which he executed 1o Kean, completely and in due form executed his power. If he did, there is an end to the Wife’s power ; if he did not, she was entitled to appoint. — The present controversy is betw'een volun-. teers, and the wife is entitled, unless there has been not only an
 
 intention
 
 to appoint, but an
 
 actual
 
 appointment, and that made in the precise form required by the power. This position is proved by many authorities
 

 (a.)
 

 It is then necessary to enquire in what manner Blount, the donor of this power, declared it should be exercised, so as to defeat the right of the wife? fie required that it should, be
 
 hj deed,
 
 executed in the presence of a witness or witnesses, and that by this deed, Haslin the husband, should
 
 limit and appoint to ‘whom Kean should convey,
 
 provi-
 
 *314
 
 <]ed such person should be qualified to take, hold and transfer lands in North-Carolina — Has the husband ap- . *
 
 pointed,
 
 and
 
 in the manner
 
 prescribed? Docs his deed to Kean appoint
 
 to whom
 
 Kean shall convey ? No
 
 ;
 
 it au-thorises Kean to convey to whom
 
 he
 
 pleases in
 
 his discretion.
 
 This is a confidence which Blount did not'confer on Kean, nor did he vest Haslin with a power to confer it. However, it is said, that Haslin took a beneficial interest under the power $ for as lie might appoint whom he pleased, he could consequently have appointed himself. That will depend upon a fact which docs not appear in tin's case, namely, whether lie was qualified to take, hold and transfer lands in North-Carolina. if he were qualified, then he has a beneficial interest
 
 •,
 
 but it is indispensible for those who claim the execution of a power, to shew every circumstance necessary therefor.
 

 But assuming it as a fact, that the husband was qualified, and could appoint himself, and that having a beneficial interest, he could delegate this power, has Kean exercised it ? — He has not. — But then it is said, that having tiie legal estate, with Haslin’s power, he might appoint himself. Uoes Haslin’s deed say so ? It only authorises him to bargain, sell, alien and convey, to any person in his discretion, who should be qualified to take, hold, and transfer lands in North-Carolina. In substance, the deed is, that Haslin authorises him to sell to any person, being as the deed declares, about to take a voyage to South-America, when as the purchaser was to be looked for, it was not in the nature of things, that Haslin could be present. And though Haslin declares in the deed, that'he transfers that authority
 
 in execution of the power,
 
 it is only by
 
 reference
 
 to his power, and is tantamount to saying,
 
 “
 
 in virtue of his
 
 power.”
 
 — It
 
 seems
 
 impossible to collect from this deed, an intention in Haslin to effect any other object than a bare substitution ; there is nothing in it which even implies, that lie liad surrendered or released to Kean the right of appointing, nor any thing which
 
 *315
 
 prevented liaslin from revoking it tbe next moment, Tbe substitute must then necessarily stand .in tbe shoes of his principal
 
 ;
 
 and until be had bargained and sold the lands, as he was entrusted in bis discretion to do, the, power of the wife remained undefeated. To consider the deed asan execution of the power, and consequently as a destruction of the power limited to the wife,'could only be by a far-fetched presumption, w hich we are not authori-sed to make in favor of a stranger and a pure volunteer j especially when by so doing we are defeating tbe w'ife, who was an object of the donor’s bounty
 
 wesay, donor's
 
 bounty, for if it was tbe husband’s bounty, she has still a stronger claim. And according to the view' of tliocasc which w'e have taken, it seems clear, that the release or other act of tbe husband, since tbe appointment either by himself or the substitute, (if he had a right to delegate his power,) could defeat the power ofthe wife, though he might expressly have declared it in extinction of the wife’s power. In favor of purchasers, courts of equity on account of the consideration, will effectuate appointments wherever defective, and will consider as done, what the parties have agreed to do. But it comes to the same thing at last, and is an appointment in equity.
 

 The result of the whole seems to be, that by this deed, if it operated at all, the power of the wife was placed at the mercy of Kean, instead of the husband ,* and that thereby he acquired the powmr and nothing, more, of defeating by his own act, the claim of the wife, which he could not before :
 
 but that
 
 in both cases it required the exercise of this power. Tbe consequence is, that the wife having become qualified to take, hold and transfer lands in North-Carolina, and having appointed herself, the heirs of Kean, who hold the legal estate, must convey to her. ' ■■
 

 Many points were made in this case, upon the difference in powers, and the effect of a release ; but from the view we have taken of it, this has become unnecessary to be
 
 *316
 
 examined, considering the manifest intention of the deed to be only a substitution of power. Rut if it were neccs-sary, we should say, that those who claim an execution of the power, must shew
 
 it;
 
 they must, of course, shew themselves qualified to be appointed. Aliens can take j so they can transfer, but they cannot hold lands : that therefore it does not appear the husband had any beneficial interest : if he had not, that it was then a mere personal confidence, which could not be delegated. And as to a release, it would have no effect, if the husband had no interest to give up. But if he had an interest, as the power of the wife was limited to her by the original donor, to be exercised in default of the appointment of the liusband, both being strangers and upon an equal footing, the husband by release, could only relinquish to the
 
 legal
 
 owner, what he bad j and that the only effect would be to lop off one power, in like manner as if it was spent by deatl). For Blount, who created both powers, and who as the case appears, is to be considered the benefactor of both, has appointed Kean to hold the estate subject to the appointment of the wife, in default of any appointment by the husband. And as the release could only destroy what the husband had, as between volunteers, it gave Kean no ground in equity to oppose the wife’s claim
 
 ;
 
 for that must be founded cither in regular title, according to the prescribed form, or upon moral obligation, which, in equity dispenses with form. So long therefore as Kean' continued to hold the lands, without any appointment being made by the husband, the power of the wife remained alive.—
 

 It is admitted, that the execution of a power limited to a stranger, is to
 
 ha fairly
 
 construed
 
 ;
 
 and this is .what the bookg mean, when they use the phrase, “ liberally construed and that it is to be supported, if there appear an intention, and the manner employed is within the fair and liberal exposition of that prescribed by the donor. And had the husband dearly evinced such intention, by
 
 *317
 
 limiting in this (Iced, that Kean should have, bold and
 
 enjoy
 
 the. estate, or words to that effect, such appointment would have been sufficiently formal, and enabled him to resist the w ife’s power. But. according to the clear intent of the parties, he stood in no other condition, than one with a general power of attorney to sell the lands to any person in his discretion, except such as could not hold them under the laws of .North-Caro lina.
 

 (a.)
 

 Dormer vs. Thurland, 2 P. Wms. 506. Darlington vs. Pulteney, Cowp. 260. Powell on Powers, 150, 163, and the cases there ref’ered to.