[In Bank.—February 13, 1883.]

## WILLIAM HAYES, RESPONDENT, v. JOHN H. CAMP-BELL, APPELLANT.

PRINCIPAL AND AGENT—COMMISSION MERCHANTS—CARRIER—LIEN—PAYMENT—TENDER—REPLEVIN.—A carrier of goods received from a firm of commission merchants in San Francisco certain wheat belonging to the plaintiff for transportation to Europe. The wheat was received under a contract with the firm in their own name, but in the course of a business which the carrier knew or had reason to believe was conducted by them merely as agents. The plaintiff had consigned the wheat to the firm with special instructions as to its transportation, and in delivering the same to the carrier under the contract referred to, they exceeded their authority. The firm failed, and on inquiry subsequently made in regard to the wheat, the plaintiff ascertained the terms and conditions of the contract with the carrier, and thereupon demanded the wheat, which the carrier refused to deliver, repudiating the plaintiff as the owner, and claiming a lien upon the wheat for charges arising under the contract. As to a large portion of these charges, the firm had no authority to bind the plaintiff, and no payment or tender was made by him. In an action of replevin to recover the wheat, *held*, that the carrier was put upon inquiry as to the agency and the authority of the firm, that the plaintiff was not bound by the contract, and that no payment or tender was required before commencing the action.

FINDINGS—SUFFICIENCY OF THE EVIDENCE.—The action was tried by the court without a jury, and written findings were filed. On motion for a new trial it was objected that some of the findings were not justified by the evidence. *Held*, that the evidence was sufficient, and that the objection could not be sustained.

APPEAL from a judgment of the Superior Court of the county of Sacramento, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Milton Andros,* and *Charles Page,* for Appellant.

The defendant had no knowledge of the actual ownership of the wheat, and as the agents of the plaintiff were general shipping and commission merchants, he was bound by the contract, although his instructions may not have been followed. (Civ. Code, § 2369; *Green* v. *Campbell,* 52 Cal. 586; *Hayes* v. *Campbell,* 55 Cal. 421; *Waring* v. *Mason,* 18 Wend. 434; *Lobdell* v. *Baker,* 1 Met. 193; *Munn* v. *Commission Co.* 15 Johns. 44; *Bank* v. *Astor,* 11 Wend. 87; *Wright* v. *Solomon,* 19 Cal. 76.)

The defendant had a lien on the wheat for freight, dead freight, and demurrage. The action was brought without any payment or tender by the plaintiff on account of the lien, and there was no waiver of a tender on the part of the defendant.

The mere assertion, unaccompanied by any other act, of a lien greater in amount than the lienor is entitled to, will not obviate the necessity of a tender, for it may be that the right amount would be accepted.

A legal tender is only excused in cases in which it clearly appears that it would be useless to make a tender, or that making tender would be a nugatory act. (*Farnsworth* v. *Howard,* 1 Cold. 215; *Stone* v. *Sprague,* 20 Barb. 509; *Bellinger* v. *Kitts,* 6 Barb. 281; *Holmes* v. *Holmes,* 12 Barb. 137, 146; *Hazard* v. *Loring,* 10 Cush. 267; *Hoyt* v. *Sprague,* 61 Barb. 506.)

The party claiming a waiver must be ready and willing to produce and pay the money, and must be prevented by the creditor declaring he will not receive it. In such case actual production is dispensed with. (*Farnsworth* v. *Howard, ubi sup.; Lacy* v. *Wilson,* 24 Mich. 479; *Dorsey* v. *Barbee,* Litt. Sel. Cas. 204; *Terrell* v. *Walker,* 65 N. C. 91; 2 Greenl. on Ev. § 603; 2 Pars. on Cont. 643.)

*J. H. McKune,* and *J. C. Ball,* for Respondent.

Where a party having knowledge of such facts as would lead an honest man using ordinary caution to make further inquiries, does not make, but on the contrary, studiously avoids making such inquiries, he must be taken to have notice of those facts which, if he had used ordinary diligence, he would readily have ascertained. (Wade on the Law of Notice, §§ 10, 11; *Whitbread* v. *Jordan*, 1 Younge & C. 303; *Hankinson* v. *Barbour*, 29 Ill. 80; *Lewis* v. *Bradford*, 10 Watts, 67; *Williamson* v. *Brown*, 15 N. Y. 354; *Fisk* v. *Potter*, 39 N. Y. 70; Civ. Code, § 19; *Bank* v. *Delano*, 4 N. Y. 326.)

Where one has the property of another, with the right to retain it for the satisfaction of a lien, if he demands more than he is entitled to he thereby waives his lien, and without tender of the money due, the owner may recover possession of the property by proper action. (*Kerford* v. *Mondel*, 28 Law J. Ex. 303; The Norway, Browning & Lushington's Reports, pp. 377, 404; *Allen* v. *Smith*, 12 Com. B. N. S. 638; 3d Bouvier's Inst. § 3525; *Kennet* v. *Robinson*, 2 Marsh. J. J. 84.)

MYRICK, J. — This case was in this court on a former appeal when a new trial was ordered. The decision is reported in 55 Cal. p. 421. A new trial was had, and judgment went for plaintiff. From that judgment, and from the order denying motion for new trial, defendant has appealed. The facts as now presented are in some respects different from those presented on the former appeal.

The transcript shows that the findings as to the following facts were agreed to by the parties: —

Plaintiff was the owner of the wheat in controversy. He shipped the wheat October 18, 1874, by rail from Woodland, Yolo County, consigned generally to E. E. Morgans' Sons, care of Starr Bros. & Campbell, at Vallejo, to be by Morgans' Sons shipped to Europe, and there sold by Morgans' Sons for the account of plaintiff. The charges and cost of transportation to Europe were to be at the rate of £3, 17s, 6d per ton, to be paid by plaintiff. There were no marks on the wheat to indicate either the ownership or destination. E. E. Morgans' Sons were general shipping and commission merchants doing business at the city and county of San Francisco. In 1872–73 they had

been largely engaged in purchasing and selling wheat in California, and forwarding the same to Europe for sale. In 1873 and 1874 they were largely engaged in chartering vessels to carry wheat from ports in California to Europe to be sold by them, but were not buying, selling, or shipping their own wheat. In March, 1874, Morgans' Sons made and entered into a charter party with the owner of the British ship *Charles Murdoch*, by which they chartered the carrying capacity of the vessel at the rate of £4, 7s, 6d per ton. The vessel was to employ stevedores, and the cargo was to be stowed under the captain's supervision and direction. The defendant Campbell was master and part owner of the ship. Pursuant to the charter party the ship proceeded to Vallejo to receive cargo, and at that place, October 18, 1874, the wheat of plaintiff was placed on board the vessel by E. E. Morgans' Sons in their own name, and received by the master under the charter party. On the day following, October 19th, Morgans' Sons became insolvent, and broke the terms of the charter party by refusing to proceed with the loading of the ship; and the ship was not loaded by them other than by placing on board the wheat of plaintiff and others, amounting in all to about two hundred and fifty tons, being less than half a cargo. Prior to the commencement of this action plaintiff demanded from defendant Campbell the possession of his wheat, which was refused, Campbell claiming a lien under his agreement with Morgans' Sons. The defendant incurred no expense in relation to this wheat, and the charter party had no relation to it. The taking on board and discharging was done by stevedores paid by plaintiff, and Morgans' Sons never pretended or represented to defendant or any one that this wheat belonged to them.

In addition to the findings agreed to the court found, among other facts, —

That in conducting their business Morgans' Sons, as charterers, had the *Charles Murdoch* alongside the wharf at Vallejo as a general ship, and invited and solicited cargo from separate owners of wheat, and that plaintiff sent forward his wheat without any combination or agreement with other shippers; that immediately after the failure of E. E. Morgans' Sons the plaintiff sent his agent, L. D. Stevens, to Vallejo, to ascertain the status of his

wheat, and to take measures for its recovery. And the said Stevens, as such agent, had several interviews with the defendant between the 20th and 29th of October, 1874, and therein demanded of the defendant that he surrender to plaintiff the possession of said wheat, and offered to allow the defendant to carry forward said wheat for him to Europe on the same terms and for the same freight money as was stipulated in said charter party; that is to say, the plaintiff offered to pay the defendant £4, 7s, 6d, per ton to carry his said wheat to Europe for him, and the defendant then and there refused to carry forward his wheat for plaintiff at all, and claimed and insisted that the wheat was the property of said E. E. Morgans' Sons; that he did not know or recognize the plaintiff as owner, or interested in said wheat; that the said E. E. Morgans' Sons had broken their said contract with him, and failed to furnish cargo for his said ship as stipulated in said charter party; that there were large sums due him as owner of said ship from E. E. Morgans' Sons for damages in the nature of demurrage, as well as for the freight that might become due for the actual carriage of a cargo to Europe, and the said defendant then and there demanded of the plaintiff that he should, as a condition precedent to the delivery of said wheat to plaintiff, pay, —

1. All damages in the nature of dead freight sustained by the owners of said ship by the failure of said E. E. Morgans' Sons to furnish full cargo for said ship as provided in said charter party.

2. All damages in the nature of demurrage sustained by said owners of said ship by the detention of said ship beyond the lay days provided for in said charter.

3. The freight of all the wheat actually laden on board said ship, as well the wheat of other shippers as the wheat of this plaintiff, and the defendant declined and wholly refused to deliver the wheat of the plaintiff to him on any other terms, and refused to carry the said wheat forward to Europe for him at the rate stipulated in said charter party, and refused to treat plaintiff as the owner of said wheat on any terms.

The court also found that defendant during all the times his ship was awaiting cargo at San Francisco was advised, had notice of, and knew the following facts:—

1. That E. E. Morgans' Sons were, in the matter of chartering and freighting ships during the shipping season of 1784, engaged in chartering ships and sending forward wheat and flour as agents of the grangers (farmers) of California, and that they were not engaged in buying, selling, or shipping such or any goods on their own account.

2. That E. E. Morgans' Sons had no warehouse for storage of wheat in said State.

3. That they had no place of business other than their broker's office in San Francisco.

4. That they depended for cargo on wheat sent forward from time to time from the said farmers as principals for shipment on board their chartered vessels.

3. That E. E. Morgans' Sons did not own or claim to deal with said or any wheat as their own, and such facts were sufficient to put a reasonable man on inquiry as to the actual ownership of said wheat, and said defendant did not deal with said Morgans' Sons as the ostensible owners of said wheat with the belief that said E. E. Morgans' Sons were such owners, but the facts they did know were sufficient to put defendant on inquiry as to the true ownership of said wheat, and by inquiry of said E. E. Morgans' Sons he could have readily ascertained the names of the true owners of said wheat.

Defendant on his motion for new trial objected that these findings were not sustained by the evidence; he also alleged error in the ordering of judgment, averring that defendant had a lien on the wheat which was not extinguished by payment or tender before demand for possession.

We have examined the testimony, and think there is sufficient to sustain the findings objected to. In some respects the testimony is not positive, nor as clear as might be expected where persons are carrying on business as important as the business referred to; yet we find sufficient testimony to justify the findings. Let us take the agreed facts that in 1873 and 1874 Morgans' Sons were engaged in chartering vessels to carry wheat from California to Europe, but were not buying, selling, or shipping their own wheat; that the charter party had no relation to this wheat; that by the terms of the charter party the owners of the vessel were to pay the stevedores for loading, but

that in fact plaintiff paid them; that Morgans' Sons never pretended or represented to any one that this wheat belonged to them; together with the testimony of Wolcott, a partner in the firm of E. E. Morgans' Sons, who told the defendant when he applied for cargo that he must wait his turn; of Chapman, agent for the defendant: "I understood that Morgans' Sons in 1874 were shippers of wheat, and agents for the grangers; the grangers were the farmers and wheat-growers of the country generally"; and it seems to us there is *some* evidence, though perhaps slight, from which the court was justified in finding that the defendant had sufficient notice to put him on inquiry. It seems to us that the main object of the master of the vessel was to obtain a cargo at the high rate named in the charter party, and then force payment, irrespective of who might be the owner, and of their interests or rights. The object of Morgans' Sons in agreeing to pay to the ship owner ten shillings per ton more than he was to receive from the grower is not apparent; however, with that we have nothing to do in this controversy.

If, as found, Morgans' Sons were carrying on a commission business, and in that business chartered the ship, and in receiving plaintiff's wheat and contracting for its carriage acted as his agents, defendant was put upon inquiry as to the extent of their powers. Such inquiry, if pursued, would have led to the information that their powers extended to contracting for carriage at the rate of £3, 17s, 6d per ton, and that they had no power to make a contract which would subject the wheat to charge for dead freight or demurrage. Defendant refused to recognize any right or claim of plaintiff to the wheat. He also refused to deliver it until his requirements as to dead freight and demurrage were complied with. By such refusal he waived the prepayment or tender by the plaintiff of the amount of freight.

It may be added, it does not appear that at the time of plaintiff's demand any dead freight or demurrage had accrued, even if there had been authority to subject the wheat thereto; but defendant claimed the right to hold it for any possible future accruing loss.

Judgment and order affirmed.

MORRISON, C. J., ROSS, J., and SHARPSTEIN, J., concurred.

McKEE, J., dissented.

Petition for a rehearing denied.