*W. T. JOHNSON and others v. JOSEPH P. PRAIRIE.

*Trusts and Trustees—Equitable Title in Ejectment—Agency, evidence in.*

1. Where a deed is made to a trustee conveying land in trust for a married woman, the legal and equitable title will at her death descend to her heirs, since the trustee is no longer necessary, and

*Mr. Justice MERRIMON having been of counsel did not sit on the hearing of this case.

they have the right to recover the land where they are out of possession at her death, if their estate has not been divested by some superior title.

2. The assignee of a trustee having the legal title, not required for the purposes of the trust, cannot recover the possession from the owner of the equitable title.

3. Where a purchaser, in the necessary deduction of his title, must use a deed which leads to a fact, showing an equitable title in another, he will be affected with notice of that fact.

4. The only effect the transfer by a trustee of the legal estate has on the *cestui que trust* is, that it puts the grantee in an adversary position, and the *cestui que trust* must enforce his right before the statute bars.

5. Declarations of a principal, made after the completion of an act performed by an agent, are not competent to show that the agent had authority to perform such act.

6. Although such evidence was directed to the judge, in order that he might find the preliminary fact that there was *prima facie* evidence of an agency, yet, if improperly received, a new trial will be awarded.

(*Jasper* v. *Maxwell*, 1 Dev. Eq., 357; *Turnage* v. *Green*, 2 Jones Eq., 63; *Matthews* v. *McPherson*, 65 N. C., 189; *Stith* v. *Lookabill*, 76 N. C., 465; *Thompson* v. *Blair*, 3 Mur., 583; *McRee* v. *Alexander*, 1 Dev., 321; *Caldwell* v. *Black*, 5 Ired., 463; *Leggett* v. *Coffield*, 5 Jones Eq., 383; *Williams* v. *Williams*, 6 Ired., 281; *Monroe* v. *Stutts*, 9 Ired., 49; *Grandy* v. *Ferebee*, 68 N. C., 356; *Francis* v. *Edwards*, 77 N. C., 271, cited and approved.)

EJECTMENT, tried at Fall Term, 1884, of WAKE Superior court, before *Gudger, J.*

Verdict and judgment for defendant, and the plaintiffs appealed.

Messrs. *T. C. Fuller, E. C. Smith* and *Lewis & Son*, for plaintiffs.

Messsrs. *D. G. Fowle* and *G. H. Snow*, for defendant.

SMITH, C. J.   The land claimed by the contesting parties to this action was devised in 1824 by Moses Mordecai to

Henry Mordecai, under whom both derive title. The devisee, Henry Mordecai, executed a deed in December, 1854, conveying the land to Henry Miller in trust for the sole and separate use of Sarah Johnson, free from the control or liability for the debts of Wiley Johnson, her husband, and subject to her disposal by writing under seal, and attested by two witnesses directing to whom the trustee shall make title.

The plaintiffs, some of whom were under age at the time of bringing the action on March 15th, 1878, are the heirs-at-law of the said Wiley Johnson and his wife, of whom the latter died in June, 1863, and the former in August of the next year. This is the claim of title set up by the plaintiffs.

The answer of the defendant controverts the allegations of title in the plaintiffs, without averring any in himself, but upon the trial of the issue of ownership in the plaintiffs, upon which an adverse verdict was rendered, he claimed title to the premises derived from the same original source and through two distinct and separate channels.

In support of his claim, he read in evidence a deed from Henry Miller, the trustee, made on July 29th, 1859, to one Henry Jordan, conveying the land without the direction or assent of the said Sarah Johnson, and a deed from Henry Jordan to the defendant for the same, dated on December 19th, 1872.

He also produced in evidence a deed for the premises, executed December 14th, 1872, by John Bunting to the defendant, the bearing of which upon the issue is not stated and does not appear.

To show a paramount equitable title transmitted from Henry Mordecai through another channel to himself, the defendant offered evidence to show a contract in writing (of which the original being lost parol proof was received) entered into between the said Henry Mordecai, through the

11

agency of George Mordecai representing him, and John Taylor, on or about November 11th, 1854, at which time the latter was put into possession by Wiley Johnson, and this possession was continued to 1872 or 1873. He then put in evidence a deed of mortgage for the land made May 22nd, 1858, from Taylor to Henry Jordan, and a subsequent assignment to him of the equity of redemption.

Another deed was exhibited from Miller, trustee, and Sarah Johnson, the *cestui que trust* to George Taylor, dated May 11th, 1857, conveying the portion of the land described in the deed from Henry Mordecai to the former, but embracing no part of that in controversy, in which one of the boundaries is described as running "to John Taylor's corner, thence along John Taylor's line to the Tarboro road." This is offered as a recognition of the superior right of Taylor under his contract with the said Henry Mordecai.

It is plain that the full equitable estate, of which the trustee held a mere legal title for its protection, no longer necessary after the death of the said Sarah Johnson, desscended to the plaintiffs, and, as possession is not needed in executing the trust, they have a right to recover the possession unless their estate has been in some way divested, or a superior equitable title was acquired by Taylor under his alleged contract of purchase. *Jasper* v. *Maxwell*, 1 Dev. Eq., 357; *Turnage* v. *Green*, 2 Jones Eq., 63; *Matthews* v. *McPherson*, 65 N. C., 189.

The assignee of a trustee having the legal title not required for the purposes of the trust cannot recover possession from the owner of the equitable estate. *Stith* v. *Lookabill* 76 N. C., 465.

The deed from Miller, made in disregard of the declared trusts, could have no other effect than to transfer the legal estate with those adhering trusts, which could be enforced against the grantee, Henry Jordan. Nor does the latter take the legal estate disencumbered of the trusts as a pur-

chaser for value without notice, for he has notice of the provisions of the deed conveying the land to his grantor the trustee.

The rule is thus laid down by Chief Justice TAYLOR in *Thompson* v. *Blair*, 3 Murph., 583:

"It is a well settled rule in this court, that where a purchaser, in the necessary deduction of his title, must use a deed which leads to a fact showing an equitable title in another, he will be affected with notice of that fact."

The only prejudicial result produced by the transfer of the legal estate may be to put the grantee in adversary relations towards the *cestuis que trust,* and force them to pursue and charge it within a limited time. But as the statute of limitations, in analogy to which a court of equity proceeds in administering relief, was suspended until the 1st day of January, 1870, and longer by reason of the supervening disability of infancy as to some of the plaintiffs, these latter do not encounter this obstruction. The running of the statute against a part of the plaintiffs who, as adults, have slumbered upon their rights, will not prevent the enforcement of the rights of such of the co-tenants as were under disability up to the period after which a limited time was allowed in which to bring their suit. *McRee* v. *Alexander,* 1 Dev., 321; *Caldwell* v. *Black,* 5 Ired., 463.

No legal estate has therefore been acquired that can be set up in bar of the claim of the infant plaintiffs to recover possession as against a subsequent trustee. *Leggett* v. *Cofield,* 5 Jones Eq., 382.

The defendant also deduces an equitable title to the land under the contract alleged to have been made with Taylor by Henry Mordecai, before the execution of his deed to Miller, supported by a continuous and uninterrupted possession in Taylor, thence until 1872, and thereafter in the defendant under Jordan's deed to him. If the existence of this contract be shown, and authority in George Mordecai

to make it and bind the said Henry Mordecai, this title is, paramount and must prevail against the plaintiffs and defeat their action.

It thus becomes necessary to inquire into the competency of evidence offered and admitted after objection from the plaintiffs, to show the authority conferred upon the alleged agent, George Mordecai, to make the contract of sale.

To show such agency the defendant was allowed to prove the declarations of Henry Mordecai, made to the witness in 1872, " to the effect that George Mordecai acted as his agent in the sale of the same lands," of which that in dispute forms a part.

This declaration, made in 1872, is received as evidence of an agency exercised in 1854, eighteen years previous to entering into a contract binding upon the principal; in other words, to prove a pre-existing authority, not to confer it. The evidence is narrative of a past transaction or fact, and is offered to establish it, and can no more be competent for such purpose than if proceeding from any one else. Henry Mordecai must by words or acts constitute an agency, and then they have a substantive operation in creating it, but the declaration of what had been done in the past cannot be accepted as evidence of it. It is but hearsay.

It is true the court must first have sufficient evidence of an agency to permit the acts of an agent to go to the jury as acts of the principal, and then both the agency and what was said or done in its exercise must go to the jury to be passed on by them. The cases to this effect are numerous, and we cite only a few. *Williams* v. *Williams*, 6 Ired., 281; *Monroe* v. *Stutts*, 9 Ired., 49; *Grandy* v. *Ferebee*, 68 N. C., 356; *Francis* v. *Edwards*, 77 N. C., 271.

But while the court must first find that there is *prima facie* evidence of the agency, the same evidence goes to the jury, and being material, its admission involves error.

There was other evidence bearing upon the same point,

but, as it stood confronting the fact that a little more than a year after the date of contract, Henry Mordecai, assuming to be still owner, conveyed the same land to Miller in apparent obliviousness of the prior agreement made in his name, we cannot undertake to measure the influence which these declarations may have had on conducting the jury to the conclusion announced in their verdict. It is sufficient to say, the declarations ought not to have been received, and the error enters into and vitiates the finding.

We cannot accede to the suggestion of counsel that the improper testimony was only for the court, for it was, if competent, proper to be heard by both the court, in passing upon the admissibility of the acts and declarations of the agent, and by the jury in passing upon the weight of the testimony as to both facts. If not competent for the jury, it would not be competent for the court to act upon it. But it went before the jury and must have been considered by them in making their response to the issue.

For this error, and without considering the other errors assigned, the verdict must be set aside and a *venire de novo* awarded, and it is so adjudged. Let this be certified:

Error.                                      *Venire de novo.*