DAVID A. THOMPSON ET AL. *v.* GREEN RIVER POWER
COMPANY.

(Filed 14 December, 1910.)

1. Deeds and Conveyances—Trusts—Principal and Agent—Limitation of Powers.

For the management and sale of their lands the plaintiffs made a trust deed, which provided for a local and superintending agent, and that no deed made by the trustees would be of any validity or effect unless the same be approved by the superintending agent, who was fully empowered by the writing for that purpose. By various and successive written powers of appointment under the original deed in trust and made in pursuance thereof and referring thereto, several local agents were appointed in succession to each other, expressly stating the condition of approval by the superintending agent to the validity of a sale: *Held*, the requirement of the indorsement of the superintending agent to give validity to the exercise of the power of sale by the trustees is a valid limitation upon their power, and necessary to the validity of their deed.

2. Same—Equity—Contracts to Convey—Specific Performance.

When in a deed to lands made to a trustee there is a valid condition expressed that a sale would not be valid when made by a local agent unless approved in writing by a superintending agent, definitely limiting the powers of the local agent and trustee, and this condition has not been complied with in a contract to convey given to defendant, in the plaintiff's suit to remove a cloud on his title to the *locus in quo*: *Held*, in this case, a deed subsequently tendered to and refused by the defendant, with the required approval of the superintending agent, who was ignorant of the refusal until just before the commencement of the suit, did not vest the equitable title in the defendant and give him the right to specific performance of the contract to convey.

3. Principal and Agent—Deeds and Conveyances—Limited Power—Conflict of Authority.

In this case the limited power of attorney given the local agent does not conflict with a condition that a designated superintending agent should approve the conveyance to be made by the trustees designated in a deed of trust incorporating a general scheme by the grantors for the sale and management of their lands.

4. Deeds and Conveyances—Principal and Agent—Limited Powers—
Registration—Notice—Parol Evidence.

Purchasers are put upon notice of the limited powers of sales
agents for lands, which were contained and defined in a regis-
tered deed of trust incorporating a general scheme for the sale
of grantor's lands for them, and the law requiring that the acts
of such agent must be in writing, the scope of the agent's au-
thority cannot be extended by a subsequent oral agreement.

5. Same—Ratification—Contracts to Convey—Specific Performance
Equity.

The grantors in a deed of trust of lands to be conveyed by the
trustee for their benefit under a general and defined scheme of
sale, imposing a condition that the sale should be assented to
in a particular way by an agency defined in the deed for the pur-
pose, are not held to the ratification of the unauthorized acts of
sale made without the performance of the condition imposed, by
the receipt of the purchase price by the trustees, in the absence
of knowledge or notice thereof; and equity will remove the cloud
from the title of the *cestuis que trust* upon their paying back the
purchase money with interest from the date of payment.

APPEAL from *Councill, J.,* at the May Term, 1910, of HEN-
DERSON.

This action was brought under section 1589, Revisal, to re-
move a cloud from the title of plaintiff, asserted by defendants.
The defendants, admitting the legal title to be in the plaintiffs,
assert that they have the equitable title under a contract to con-
vey made by the attorney in fact of the plaintiffs, to wit, one
S. B. Justice, said contract being dated 27 March, 1900, and
that on 2 April, 1900, they paid the full purchase price, $100,
for the land. It was admitted that a deed dated 12 October,
1905, was tendered defendant Staton, with whom the written
contract of purchase was made, but it was rejected by Staton,
as the description of the land did not agree with the descrip-
tion in his contract. The original contract contained no suffi-
cient description of the land to admit of its identification, but
defendants Staton and his assignees contend that, at the time
the contract was delivered, a plat of the land was delivered as a
part thereof, signed by the agent and containing a sufficient
description. It also appears that the original contract was re-
corded without including the description from the plat, which

is not therein referred to, and about two years thereafter the agent of plaintiffs inserted in the original contract the full description, which was not thereafter recorded upon proof, but the full description was written therein on the record after this suit was brought. The defendants contend that the payment of the purchase money to plaintiff's local agent, the payment of it to the plaintiffs by their agent, and its retention of it by them for about nine years, estops them to now repudiate the contract and refuse to make the deed; that the refusal to make the deed is wrongful; that after the payment of the purchase money, Staton went into possession and remained therein for about seven years and until he sold to the other defendants. The defendant, Green River Power Company, a corporation, claims that it is the owner of the equitable title of Staton and is entitled to have deed conveying the legal title made to it.

The following issues were submitted to the jury, who responded thereto as is set out:

1. Did the predecessors in trust of plaintiff trustees, through their agent, C. B. Justice, and U. G. Staton, one of the defendants, enter into a written contract dated 27 March, 1900, marked "Exhibit A," for the sale and purchase of 55 acres of land, as alleged in the answer? Answer: Yes.

2. Did the said agent of the predecessors in trust of plaintiff trustees, at the time of entering into said contract dated 27 March, 1900, deliver to defendant U. G. Staton a survey and plat of said 55 acres of land, known as the G. B. Heatherly survey, and place said defendant Staton in possession of said land under said contract and survey, as alleged in the answer? Answer: Yes.

3. Have the defendants been in actual, continuous possession of said 55 acres of land under and by color of said contract dated 27 March, 1900, as per calls of said Heatherly survey, and after payment of the purchase price, for more than seven years prior to the commencement of this action? Answer: Yes.

4. Did the defendant U. G. Staton pay to the agent of the predecessors in trust of plaintiff trustees, on 2 April, 1900, the full purchase price for said 55 acres of land, in accordance with

the terms of said contract dated 27 March, 1900, and did said agent turn over the money so received to the predecessors in trust, as alleged? Answer: Yes.

5. Have the plaintiff trustees, and their predecessors in trust, retained the purchase price for said 55 acres of land from 2 April, 1900, until about 1 May, 1909, without advising the defendants that they repudiated said contract or refused to execute a deed in accordance therewith, as alleged in the answer? Answer: Yes.

6. Has C. B. Justice, under power of attorney, as recorded in Book 61, page 224, of the records of Henderson County, N. C., acted continuously under said power to date of his death, about 1 January, 1910, as the agent of plaintiff trustees and their predecessors in trust, as alleged in the answer? Answer: Yes.

7. Are the plaintiff trustees and Willett Bronson wrongfully and unlawfully refusing to execute a deed to defendants for the land, in accordance with the said contract dated 27 March, 1900, as alleged in the answer? Answer: Yes.

8. Did defendant U. G. Staton, for value, assign his interest in said contract dated 27 March, 1900, to the defendant J. M. Torrence, as alleged in the answer? Answer: Yes.

9. Did the defendant J. M. Torrence, for value, assign his interest in said contract dated 27 March, 1900, to the defendant, the Green River Power Company, as alleged in the answer? Answer: Yes.

Thereupon his Honor rendered judgment for the defendants, decreeing that they were entitled to specific performance of the contract, and if deed sufficient to pass the fee were not made within a fixed time, the decree should operate as a conveyance, and for costs. The plaintiffs appealed.

*Smith & Schenck and J. H. Merrimon for plaintiffs.*
*Maxwell & Keerans, H. G. Ewart, and Staton & Rector for defendants.*

MANNING, J. The decision of this case and the determination of the rights of the parties depend upon the proper construction

of certain deeds of record in the county in which the land involved is situate, and which were offered in evidence at the trial.

On 8 March, 1830, Isaac Bronson and Goold Hoyt, of the city of New York, then being owners of large bodies of land (locally known, it seems, as speculation lands) in Mecklenburg, Rutherford (and in that area now Henderson), and Buncombe counties, in this State, conveyed the same to James Hoyt, John N. Ward, and William G. Ward, as trustees. The trusts upon which they were to hold said lands are drawn and declared with great care and particularity. The grantors therein defined a scheme for the management and disposal of said lands which involved the appointment of a special or local agent to make leases and contracts of sale, and a superintending agent, whose approval and indorsement was indispensable to the validity of any conveyance by the trustees. On this point this deed provided: "But no deed, lease, or conveyance whatsoever of the premises or any part thereof shall, if made by said parties of the second part (the trustees), or any one of them, be of any validity or effect whatsoever unless the same be approved and indorsed by Arthur Bronson, esquire, who hath been duly empowered for that purpose." Joshua Forman was named as the local agent, and the instrument by which he was appointed and his powers limited is therein expressly referred to. The deed also contained carefully drawn directions as to the method of appointment of the successor trustees, superintending agent, and local agent; and these several deeds successively made contained the same requirement as to the indorsement and approval of the superintending agent to give validity to deeds or conveyances by the trustees. Frederick Bronson succeeded Arthur Bronson as superintending agent, and was in turn succeeded in 1869 by Willett Bronson, who has been since then and is now the superintending agent. T. B. Justice succeeded Joshua Forman as local agent, and was in turn succeeded, 1 November, 1872, by C. Baylis Justice. All these appointments were made in the manner prescribed by the original deed of 1830. In 1859 and again in 1871 and in 1901, new trustees were ap-

154—2

pointed in the prescribed manner, and these later deeds refer expressly to the previous deeds by dates and books of record.

The deed of 1871, one of the deeds in which new trustees are appointed, after reciting the previous deeds, contains the following provisions: "And the said parties of the second part (the trustees) or such of them as survive, shall at all times, at the proper cost and charges of the said heirs and assigns of the said Isaac Bronson, Goold Hoyt, and Archibald McIntyre (who had purchased an interest), make and execute such deeds, leases, and conveyances of the premises as shall be required or directed by said heirs . . . and especially when required by Thomas B. Justice, the special agent of the parties of the first part for managing, leasing, and selling the lands aforesaid, thereunto authorized by a special and limited authority . . . but no lease, deed, or conveyance of said premises or any part thereof shall, if made by the said parties of the second part or any of them, be of any validity or effect whatever, unless the same be approved by Willett Bronson, who hath been fully empowered for that purpose." And it further therein provided: "which deeds, leases, and conveyances, to be lawful, are to be indorsed and approved in manner aforesaid."

Thomas B. Justice having ceased to act as the local agent, C. Baylis Justice, as hereinbefore stated, was duly appointed on 1 November, 1872, by a written power of attorney, in which the deed of 1871, from which we have quoted, was expressly referred to. This power of attorney undoubtedly confers large powers upon the attorney in fact, but no larger than are expressly authorized by the deeds of trust, and in no provision of that instrument is the requirement of the approval by indorsement of the superintending agent dispensed with, nor could it be. The method and manner of his appointment, as prescribed in the deed of trust, is carefully followed, and the deed authorizing his appointment referred to. The precise questions presented, therefore, are:

(1) Is a conveyance or deed valid without the indorsed approval of the superintending agent?

(2) Can the local agent make a contract absolutely binding and enforcible against the trustees, under the provisions of these deeds?

The requirement of the approving indorsement of the superintending agent to give validity to the exercise of the power of sale by the trustees is clearly a limitation upon their power and clearly within the right of the creators of the trust to annex. In 2 Perry on Trusts, sec. 784 (5 Ed.), it is said: "If the sale is directed to be made with the consent of the tenant for life, or any other person, such consent is indispensable to a valid exercise of the powers." In Sugden on Powers, star page 319, this writer says: "Where the consent of any person is required to the execution of the power, that, like every other condition, must be strictly complied with." In 4 Kent's Commentaries, 330, the learned author says: "But it is the plain and settled rule that the conditions annexed to the exercise of the power must be strictly complied with, however unessential they might have been if no such precise directions had been given. They are incapable of admitting any equivalent or substitution; for the person who creates the power has the undoubted right to create what checks he pleases to impose, to guard against a tendency to abuse. The courts have been uniformly and severely exact on this point." And at p. 333 he further says: "In all other respects the intention of the grantor of a power, as to the mode, time, and conditions of its execution, must be observed, subject to the power of the court of chancery to supply defective executions. When the consent of a third person to the execution of a power is requisite, the consent shall be expressed in the instrument by which the power is executed, or shall be certified in writing thereon." So this Court held in *Haslin v. Kean*, 6 N. C., 309: "The main question in this case is whether John Haslin, by the deed which he executed to Kean, completely and in due form executed his power. If he did, there is an end to the wife's power; if he did not, she was entitled to appoint. The present controversy is between volunteers, and the wife is entitled, unless there has been not only an *intention* to appoint, but an *actual* appointment, and that made in the *precise* form required by the power." See, also, *Phifer v. Phifer*, 41 N. C., 155. So in *Pippen v. Wesson*, 74 N. C., 437, and *Hardy v. Holly*, 84 N. C., 661, it was held by this Court that, "One who contracts by virtue of a power, statutory

or otherwise, and who, except by such power, is incapable of contracting, must pursue the power, or such contract will be void."

Under these authorities we must, therefore, conclude that the approval of Willett Bronson, the superintending agent, indorsed on the deed, was necessary to give it validity. Such a deed so indorsed by Bronson, dated in 1905, was tendered the defendant Staton and rejected by him because, as he asserted, it did not embrace the boundaries covered by his contract with the local agent. It does not appear that Bronson was informed of the rejection of this deed by Staton until shortly before this action was brought. (2) Could the local agent make a contract for the sale of land, binding and enforcible in equity against the owners, in the absence of the approval of Bronson, the present superintending agent? The power of attorney under which the agent Justice acted, and from which he derived his authority, was in writing, was recorded in the county of Henderson, and was offered in evidence by the defendant. While the powers are extensive, the deed of 1871 is therein referred to, and that was also duly recorded. The powers given the agent Justice in no way conflict with the power and duty of Bronson, and we do not think such power and duty could be destroyed or impaired by the power of attorney appointing Justice the local agent.

In *Bank v. Hay,* 143 N. C., 326, this Court, speaking through *Justice Walker,* said: "There is a general rule that when one deals with an agent it behooves him to ascertain correctly the scope and extent of his authority to contract for, and in behalf of, his alleged principal; for under any other rule, it is said, every principal would be at the mercy of his agent, however carefully he might limit his authority. The power of an agent is not unlimited unless, in some way, it either expressly or impliedly appears to be so, and the person who proposes to contract with him as agent for his principal should first inform himself where his authority stops, or how far his commission goes, before he closes the bargain with him. *Biggs v. Ins. Co.,* 88 N. C., 141; *Ferguson v. Mfg. Co.,* 118 N. C., 946." 2 Am. and Eng. Enc. of Law and Practice, 961. At page 966

of the same work it is said: "Where a third person has knowl-
edge that an agent's authority is in writing, or that it must
necessarily be in writing in order to bind the principal, he must
call for and examine the power and take notice of the nature
and extent of the authority conferred, as any act beyond the
scope of such written authority will ordinarily not be binding
on the principal." "Where real estate is the subject of sale,
the person purchasing of an agent must see that the power to
convey is of equal dignity with the deed to be executed." *Pea-
body v. Hoard,* 46 Ill., 242.

The examination of the power of attorney to Justice would
have informed the defendant Staton of the limitation of his
power to bind these principals to execute a deed in pursuance
of his contract, and would have led him to discover the require-
ment of the approval of the superintending agent Bronson.
The principle controlling this is clearly stated in 2 Pom. Eq.
Juris. (3 Ed.), sec. 626, and is uniformly accepted by the
courts and text-writers: "Wherever a purchaser holds under a
conveyance and is obliged to make out his title through that
deed, or through a series of prior deeds, the general rule is
firmly established that he has constructive notice of every mat-
ter connected with or affecting the estate which appears, either
by description of parties, by recital, by reference, or otherwise,
on the face of any deed which forms an essential link in the
chain of instruments through which he must derive his title.
The reasons for this doctrine are obvious and most convincing;
in fact, there could be no security in land ownership unless it
were strictly enforced." *Smith v. Fuller,* 152 N. C., 7; *John-
son v. Prairie,* 91 N. C., 159; *Holmes v. Holmes,* 86 N. C., 205;
*Thompson v. Blair,* 7 N. C., 583.

The defendants, however, contend that the consent of Bronson
to the deed is withheld for improper and selfish purposes; but
there is no evidence, we think, to support this contention, ex-
cept that he stated at the trial that he would not consent to a
deed covering the boundaries as demanded by the defendants,
and assigned his reasons therefor, which in no view can be re-
garded as improper or selfish. The defendants Staton and Tor-

rence were informed in 1901 or 1902 that no land interfering with water power of Green River would be sold or conveyed.

The defendants further contend that, as it had been the custom of Bronson to approve deeds conveying the lands contracted to be sold by Justice, and this custom had been extended over 40 years, they had a right to rely upon this uniform custom as an interpretation of the powers of Justice. But Bronson testified, and this was the only evidence upon this question, that no deed had been executed by the trustees without his written approval indorsed thereon. This was in strict compliance with the power created by the deed of trust. The power of attorney and the deed of trust leave no room for doubt as to the powers conferred. What was thought generally of the power of Justice, or what the defendants Staton and Torrence inferred were his powers from the conduct of Justice, is not competent to enlarge the express powers conferred upon him by his written appointment. In *Minnesota Stoneware Co. v. McCrossen,* 110 Wis., 316, 84 Am. St., 927, the Court said: "The idea is advanced that written authority to an agent may be extended by subsequent oral authority. That is so in many cases, but not where the authority is required to be in writing. A power to sell and convey real estate can no more be extended or changed by parol than can a conveyance of real estate. That is so elementary that the suggestion of respondent's counsel to the contrary does not require further notice."

It is further contended that there was such ratification of the contract by the receipt and retention of the purchase money, that the plaintiff ought to be compelled to specifically perform this contract. In *Earp v. Richardson,* 81 N. C., 5, this Court said: "When the agency is to be proved by the subsequent ratification and adoption of the act by the principal, there must be evidence of previous knowledge on the part of the principal of all the material facts. 2 Greenl. Ev., sec. 66." And this is the generally accepted doctrine. The contention of the defendants, as presented in this phase of the case, is that the acquiescence or ratification by the trustees of acts not performed in accordance with the terms of the trust deed creating their power to

convey can substitute a different method of executing the power than that prescribed therein, and to this extent create a new method. This is contrary to the doctrine stated in the authorities we have already quoted from. No acquiescence or ratification by the *cestuis que trustent* is shown by the evidence, nor is there any evidence from which ratification or acquiescence by them can be inferred. As the dealings appeared to them, they were conducted in strict accordance with the terms of the deed, and this can also be said as to the trustees themselves. The evidence negatives, so far as the trustees and beneficiaries knew, any failure to observe the methods prescribed for executing the power. The evidence offered does not present the case of an attempt to repudiate a contract, but simply a case where the court will refuse to compel specific performance of a contract because it is not executed in accordance with the formality prescribed by the written instruments which control it.

The plaintiffs cannot, of course, retain the money, to wit, $100 paid by defendant Staton. They aver a tender of its return and express a willingness to repay it with interest from the date of payment, to wit, 2 April, 1900. This must be paid into court, and upon its payment into court, judgment will be entered canceling the contract as registered, and the subsequent deeds and assignments of the contract made by the defendants *inter se*.

Under the evidence and the law, his Honor should have directed a finding for the plaintiffs upon the 5th and 7th issues. The other issues are immaterial and do not present any controverted facts. For the errors pointed out, the judgment is

Reversed.