## COTTLE vs. CROCKETT

### SUPERIOR COURT, COUNTY OF SANTA CLARA

( Principal and Agent.   Construction of Powers. )

March 10th, 1922.

---

Action in replevin by Albert Cottle v. Crete Arnette Crockett.   Judgment for plaintiff.

---

1.  PRINCIPAL AND AGENT.   AUTHORITY — WRITING —STRICTLY CONSTRUED.

Where owner and broker entered into a contract of employment by written agreement, under Code Civ. Proc. Sec. 1973 and Civil Code Sec. 1624, the execution thereof under Sec. 1625 supercedes all preceding negotiations or stipulations concerning its matters, and where the terms and conditions of sale, and employment were all mentioned in unambiguous and certain language the contract must be strictly construed and no different terms inserted or added thereto, Sec. 2315.

2.  BROKERS — AGREEMENT — AUTHORITY TO SELL PERSONAL PROPERTY.

Although land brokers may have led defendant in replevin to believe when purchasig the orchard, that she was entitled to the personal property thereon, the sale by the owner must be measured and determined, wholly and exclusively, by the recitals in the broker's agreement and the deed, there being no other contract between vendor and purchaser, and broker's agreement, not mentioning the personal property, even though brokers allowed purchaser to take possession thereof.

3.  REPLEVIN — EVIDENCE — BROKER'S AUTHORITY TO SELL TO DEFENDANT.

In vendor's replevin action against purchaser, evidence held not to warrant or justify broker in selling the property in question or to show that vendor held brokers out as clothed with any such authority.

4.  PRINCIPAL AND AGENT — AUTHORITY — DUTY OF ONE DEALING WITH AGENT.

A person dealing with an agent is under a duty to ascertain what power or authority has been bestowed upon him by the principal, and purchaser, defendant in replevin, should have ascertained broker's authority as to sale of personal property before paying for the property.

5. PRINCIPAL AND AGENT — LIMIT OF WRITTEN AUTHORITY — PURCHASER CHARGED WITH KNOWLEDGE.

Where broker's authority is required to be in writing, a purchaser is charged with knowledge of that fact, and of the limitations upon broker's power contained in such writing.

———

P. H. Gosbey, Judge.

———

In the Superior Court of the State of California,

In and for the County of Santa Clara.

Albert Cottle,    Plaintiff,

vs

Crete Arnette Crockett,    Defendant.

This is an action in replevin. The plaintiff claims to be the owner and entitled to the possession of certain personal property, consisting of fruit boxes, fruit trays, engine and spray pump etc., described and enumerated in his complaint, whice he alleges the defendant wrongfully, unlawfully, and without right, took from plaintiff and withholds from him after proper demand therefor by him.

At the trial of this action the following facts were established by the evidence.

The plaintiff was the owner of an orchard, upon which the personal property described in the complaint was located and which was used in connection with the crops grown thereon.

Charles E. Tainter and Hillyer Deuprey, two real estate brokers, became interested in the sale of said orchard and sought a customer therefor. The brokers approached the defendant and entered into negotiations with her for the sale of the property. She was shown the orchard by the brokers and was told that the personal property, consisting of fruit boxes,

trays, etc., located on the premises and which were pointed out to her, would go with the orchard in case she became the purchaser.

On the 25th day of April, 1921, after considerable negotiation, the brokers prevailed upon the defendant to make a written offer of $18,000. for the ten acre orchard "together with all improvements, implements, tools, and all trays and boxes now on the premises." This written offer or receipt was signed by C. Deuprey, agent, and C. A. Crockett.

When the brokers had obtained this offer, accompanied by a deposit, they sent a telegram to the plaintiff saying; "Have deposit on your ten acres from Dr. C. A. Crockett, selling price eighteen thousand dollars" with terms stated. After sending the telegram, Chares E. Tainter, evidently anxious to complete the sale, went to Klamath Falls, Oregon, to interview the owner and consummate the deal. There is a conflict in the testimony as to the terms of sale agreed upon by Tainter and Cottle. The former stated that the owner agreed that the personal property was included and should go with the real estate upon the agreed price of $18,000; the latter denied that he made such an agreement, and said he did not consent that the personal property should go with the orchard when the purchase price was $18,000., but did consent that the personal property should be included provided the orchard should bring $21,000.

Whatever the conversations may have been between Tainter and Cottle, the former, under date of May 12, 1921, sent a telegram from Klamath Falls to Tainter & Deuprey stating: "Cottle agrees to carry out original deal, excepting as to the terms of payment."

Up to this time no written agreement or authorization had been made or entered into by Cottle with the brokers to sell the orchard. However on the 24th day of May, 1921, Albert A. Cottle and his wife,

while in San Jose, California, entered into a written agreement with Chas. E. Tainter and Hillyer Deuprey, authorizing the brokers to sell the real property, consisting of 10.14 acres, for the sum of $18,000., upon the terms and conditions therein set out.      No mention, reference or allusion whatever was made in said agreement to the personal property located on the premises, and which is involved in this controversy.

Thereafter, by deed dated May, 24, 1921, the plaintiff conveyed the real property to the defendant. No personal property is mentioned or referred to in said deed.      The defendant accepted the deed, went into the possession of both the real and personal property, and now claims to be the owner thereof.

From the time the brokers began dealing with the defendant up to the time the deed was delivered to her, the latter would have had no other thought or idea but that the personal property was to go to her if she purchased the orchard.      Neither the brokers nor the owner advised her that the agreement between the owner and the brokers did not authorize the latter to sell the personal property.      There is no evidence or testimony that her attention was ever directed to the written authorization between the owner and the brokers, or that she ever requested to see the agreement or to learn of its contents.

The agency between the owner of the land and the brokers was legally established by the written agreement executed by them, C. C. 1624, C. C. P. 1973. True, the parties to it signed it after the brokers had talked with the defendant about the personal property and after she had signed a contract with the brokers to purchase the real estate for $18,000., to include the "implements, tools, trays and boxes on the premises".      Section 1625 of the Civil Code provides: "The execution of a contract in writing, whether the law requires it or not, supersedes all the negotiations or stipulations concerning its matter

which preceded or accompanied the execution of the instrument".

Whatever, therefore, may have been said, suggested, or discussed by and between the owner and brokers before the contract of employment was entered into between them was consummated and incorporated into the agreement.    The property to be sold, the purchase price to be paid, therefor, the terms and conditions of the sale and the employment were all mentioned in the contract, couched in plain, certain and unambiguous language.    Such contracts are strictly construed and no other or different terms can be inserted therein or added thereto. C. C. Section 2315: Stemler v. Bass 153 Cal. 791:    Salter v. Ives, 171 Cal. 790:    1 Cal. Jur. 719 Sec. 24.

While the brokers may have led the defendant to believe, and she thought, that when she purchased the orchard she also was entitled to the personal property thereon, the sale by the owner must be measured or determined, wholly and exclusively, by the recitals in the agreement between the owner and his agents and his deed to the defendant.    Even conceding that the agents delivered or permitted the purchaser to take possession of the personal property, she could not sustain an action against the plaintiff to compel him to assign or transfer such property to her, nor resist an action by him against her to recover it, if he had not obligated himself by his writtten agreement with his agents to sell the personal property.

There is a very well considered case, involving practically the same issues as in the instant case, viz: Spengler V. Sonnenberg, 88 Ohio St. 192, 102 N. E. 737, 52 L. R. A. (N. S.) 510, where the court said:    "In May, 1909, William Spengler owned the lands described in the petition.    That in said month he verbally authorized Hanna & Konzen, who were real estate brokers, to sell said land at not less than $130. an acre, upon certain terms specified.    The agents were

authorized when they found a purchaser, who would buy the lands on the terms stated, to enter into a written contract with such purchaser on behalf of the defendant (the owner).

"At the time defendant authorized the real estate agents to sell the land, nothing was said concerning the kind of deed to be made; that nothing was said relative to abstract of title nor about the crops, the rents, the time when possession should be given, payment of taxes, or about all or any of the items of personal property mentioned in the contract thereafter made by the agents with the plaintiff (purchasing) or about any personal property whatsoever."

On the 26th day of February, 1910, the agents entered into a written contract with the plaintiffs, signed Spengler's name to it and delivered it to the plaintiffs." Among the other things the contract provided for was that "the owner was to execute and deliver a warranty deed, and included the provision: "It is understood and agreed that said second party is to have the tile that is on the farm at this time, also all logs, lumber, and wire fencing, etc., that are on the farm to be used for the improvement of said farm."

"At the date of the contract there was on the farm belonging to the defendant, fencing, drainage tile, farm lumber, and logs which had been procured by him."

The contract made by the agents with the purchaser contained terms and conditions which the agents were not authorized to make under the contract of their employment made by their principal, so the court sustained the owner of the land in his contention. In commenting on the the legal propositions involved, the judge who rendered the opinion said: "The incidental authority which the agent has by implication is only such as is necessary to carry into effect the power actually conferred on him. It cannot be said that, where an agent was employed to sell a piece of land for $130 an acre, he had incidental au-

thority to convey other valuable property and rights in addition to the land, for the same price, and yet that is what the written contract made by the agents in this case provided for. The tile, the fencing material, the lumber and the logs, all were personal property belonging to Mr. Spengler, separate and apart from the realty."

As a general rule "it may be said that the acts of an agent, assuming to have authority to sell his principal's personal property, will not bind the principal, unless he has actually given the agent such authority, or has held him out to the public as clothed with it." 2 C. J. 592 — Sec. 229.

In the contract of employment herein there is nothing that would warrant or justify the agents in making the sale of the personal property, nor was there any evidence that Mr. Cottle in any form or manner held out to the public that his agents were clothed with authority to make such sales.

There is a duty which devolves upon the person dealing with an agent, to ascertain what power or authority has been bestowed upon him by his principal, 1 Cal. Jur. 114, Sec. 20. In some cases, as in the present one, where the defendant failed or neglected to see the contract between the owner and his agents or to learn the contents thereof, the law appears to be severe and harsh, yet it is practically uniform in matters of this kind.

The defendant should have ascertained what was the scope of the agent's authority, before she paid her money for the property, 1 Cal. Jur. 715: 2 Corp. Jur. 562 id 565, 9b. Thompson V. Green River Power Co. 154 N. G. 13: 69 S. E. 756. When the authority is by law required to be in writing a person is charged with knowledge of that fact, and of the limitations upon the agents' power contained in such writing. 2 Corp. Jur. 565 Sec. 207.

In the case of Davis V. Trachsler, 3 Cal. App. 559, the court said: "The question to be determined by the court is, Was the sale made by G. W. Hopkins (the agent) to Frank Trachsler (the buyer) on March 24, 1897, within the scope of Hopkins' authority under the appointment of July 13, 1896? Authority to an agent to sell the real estate must be in writing (Civil Code, Sec. 1624, subdivision 69), and his actual authority is only such as the principal intentionally confers or intentionally allows the agent to think he possesses (Civil Code, Sec. 2316). There is no testimony tending to show the instrument by which Hopkins was appointed was recorded. But it was known bv appellant that he was holding himself out to be the agent of Davis. The receipt and contract of May 24, 1897, was signed as agent, the appellant having actual notice of the agency, it was incumbent on him to ascertain the scope of authority possessed by Hopkins (Solari V. Snow, 101 Cal. 387: 35 Pac. 1004) and whether he had any right to make contracts of sale and especially the kind he made with appellant (Mudget V. Day, 12 Cal. 139: Hayes V. Campbell, 63 Cal. 143: Stetson V. Briggs, 114 Cal. 514: 46 Pac. 603), an agent can only bind his principal when he acts within the scope of his authority."

"When an agent acts under a special or express authority, whether verbal or written, the party dealing with him is bound to know at his peril what the power of the agent is, and to understand its legal effect, and if the agent exceeds the boundary of his legal authority, the act, so far as it concerns the principal, is void." Blum v. Robertson 24 Cal. 140.

There is nothing in the contract of employment between Cottle and his agents Tainter & Deuprey authorizing the latter to sell the personal property belonging to Cottle located on the orchard which was sold to defendant; it thus follows that such sale, or promise of sale, by the agents to the defendant of

the fruit boxes, trays, crops, etc., was void, as to Cottle the owner.

The plaintiff, therefore, is entitled to judgment for the recovery of said personal property or its value. Let findings and judgment be prepared accordingly.

P. F. Gosbey, Judge.