N. N. FERGUSON v. THE DAVIS & RANKIN MANUFAC-
TURING COMPANY.

*Principal and Agent—Dealings with Agent—Power of
Agent to Bind Principal.*

1. One dealing with an agent must ascertain the extent of his authority to make contracts to bind his principal.

2. Where plaintiff knew that one representing himself as agent had no general power, and that his powers were limited, he cannot recover against the principal, under a contract made without authority in the latter's name, for services rendered to the agent for his benefit.

FERGUSON *v.* MANUFACTURING COMPANY.

This was AN ACTION, brought by the plaintiff to recover compensation for services rendered to the defendant, begun before a justice of the peace and heard on appeal before *Robinson, J.,* and a jury, at Fall Term, 1895, of HAYWOOD Superior Court.

The plaintiff alleged that he was entitled to compensation at the rate of $100 per month and expenses, by reason of a special contract entered into with the defendants by their agent, D. F. Gibbons.

The defendants resisted the plaintiff's right to recover on the grounds that the said Gibbons had no authority to employ the plaintiff, N. N. Ferguson.

Plaintiff testified in his own behalf:

" I had a contract with defendant. In February, 1892, D. F. Gibbons came here and claimed to be the agent of the defendent, and was such agent. The defendant Company built creameries, one in this county. D. F. Gibbons secured the stock, and he employed me to help get up the stock, and gave me a note for one hundred and fifty dollars." (The "note" referred to by witness is the paper-writing set out in the opinion of the Court.)

" On this note I received $50 from Gibbons in cash and an order on the creamery company here given by defendant, per Gibbons, for certificate of stock the value of one hundred dollars." (The order referred to is the same as set out in the opinion of Judge MONTGOMERY.)

" This order was accepted by the creamery company here, charged to the defendant Company, and the creamery company here received credit for amount of said order in settlement with the defendant company, and issued stock to the plaintiff in the amount of $100.

" After this creamery was completed, and after I had received my pay as before stated, for my services in establishing this creamery, I made a contract with Gibbons

to work for his Company, the Davis & Rankin Building and Manufacturing Co., and began work on the 15th of July, 1892. I went with him to Franklin and stayed several days, and he ordered me to Statesville. I went there and back to Franklin for the purpose of getting up stock and establishing a creamery at that place, and did get up $3,500 in stock in the name and for the defendant Company. The cost of establishing a creamery was $5,000, raised by subscription and taken in stock. I stayed there until the 10th of September. I had correspondence with parties at Plymouth, N. C., Piedmont, Ala., and other places, in the interest of the defendant company in establishing creameries at such places. I was ordered back to this place by Gibbons; the creamery at Franklin was not established; and remained here until the 15th of December.

"They owe me $600, but I only brought this suit for this amount. I have an expense account at Franklin of about $30. I received some expense money from Gibbons.

"When the creamery at this place was established, some of the parties who subscribed for stock gave their notes to the defendant Company, and the defendant Company brought suit and recovered judgment. These suits were brought and managed by Gibbons."

On cross-examination "Gibbons said he would give me $100 per month. They completed the factory at Statesville. I wrote a letter to defendant Company in December, 1892, after Gibbons left here, and told the Company that I had been employed by Gibbons to work for them, and that I was at this place awaiting orders; and I have a reply to that letter dated Dec. 19, 1892, stating that they knew nothing about it, and stating they would refer it to Gibbus. I have another letter dated on the 4th of

March, 1893, stating that Gibbons had no authority to employ me and refusing to pay."

The material parts of the defendant's testimony are stated by Associate Justice MONTGOMERY. Upon an intimation by his Honor that in no view of the case could plaintiff recover, the plaintiff submitted to a non-suit and appealed.

*Messrs. Ferguson & Ferguson* and *R. D. Gilmer,* for plaintiff (appellant).

*Messrs. Smathers & Crawford,* for appellee.

MONTGOMERY, J. : The plaintiff brought this action to recover an amount which he alleges the defendants owe him for services rendered to them in aiding them to establish, and in establishing, creameries in North Carolina. The defendants deny that they ever employed the plaintiff for any purpose, or owe him anything. The plaintiff alleges that he made his contract with one Gibbons, who represented himself to be the special agent of the defendant. On the trial the defendants, as witnesses for themselves in their depositions, stated that Gibbons was their agent to canvass for subscriptions of stock in the proposed creamery establishment, at his own expense and on a commission. One of the defendants testified that " he (Gibbons) was acting in the capacity of a special canvassing agent ; he had no capacity except to bring his best judgment to bear in the selection of parties who would contract to pay us for a creamery, when it was completed according to certain defined terms set out in a printed form of contract which we furnished him in blank. After he had taken such a contract as he thought was a good one, he sent the contract to us. We looked up the parties, and if we decided that it was a good contract we took it off his hands at a

contract price printed therein and allowed him a good per
cent. as his commission in full of his expenses and time."
The testimony offered by the plaintiff to show that the
scope of the authority of the agent was broader than that
testified to by the defendants amounted to only a scintilla.
That the agent, Gibbons, collected some of the stock sub-
scriptions, and received in payment of some a part in
money and a part in lumber with which to build the
creameries, affords no sufficient proof that his agency
extended further than the matters connected with the spe-
cial business which the defendants testified he was employed·
to do   The plaintiff also proved that Gibbons had executed
and delivered to the plaintiff a paper writing as follows:
" Waynesville, N. C., Feb. 15, 1·92 :   This is to certify
that we will allow N. N. Ferguson $150 for services in
placing stock for creamery at Waynesville, same to be
paid when factory is completed. (Signed) Davis &
Rankin, pr. D. F. Gibbons, special agent."   He also testi-
fied that Gibbons paid him  $50 of the amount, and gave
him an order on the board of managers of the creamery
for one share of stock at the par value of $100 ; that, by
an agreement between the defendants and the board of
managers of the creamery company, a share of stock was
issued to the plaintiff, and the defendants were charged
with the $100 in the settlement between the creamery
company and the defendants.   If the order had set forth
that the $100 was due to the plaintiff for services which he
had rendered to the defendants in soliciting and canvass-
ing for stock in the creameries, and that fact had been,
made known to the defendants in the settlement between
them and the creamery company, and the defendants had
assented to it, it would have been competent for the plaint-
iff to have shown the transaction as evidence going to
prove the power of the agent to bind his principal by his

FERGUSON *v.* MANUFACTURING COMPANY.

contract with the plaintiff, notwithstanding the testimony of the defendants that they had given him no such authority. But the order recited on its face that the $100 in cash had been received from the plaintiff in full of his subscribed stock, and there was no proof that the defendants had ever received notice of the plaintiff's employment by Gibbons, or that they ratified the contract between them. The general rule is that where one deals with an agent it is incumbent on him to ascertain the extent of the agent's authority and of his power to make contracts which will bind the principal. Any other rule would subject those who do business through agents (and a large proportion of the business affairs of life is conducted in this manner) to all sorts of inconvenience and loss, however carefully the principal might guard his contracts and limit the authority of his agent. *Biggs* v. *Ins. Co.*, 88 N. C., 141. The plaintiff knew that Gibbons had no general power over the establishment and erection of the creameries, and that his powers were limited, and he was therefore bound to ascertain the extent of his authority, which he failed to do. Story on Agency, p. 149; *Dowden* v. *Cryder*, (N. J. Court of Appeals,) 26 Atlantic Rep., 941.

We are of the opinion that there was no error in the ruling of his Honor, that, in no view of the case, could the plaintiff recover. No Error.