W. G. HALL v. W. W. PRESNELL AND E. F. LOVELL ET AL.

(Filed 27 November, 1911.)

1. **Principal and Surety—Attorney at Law—Collection of Debt—Extension of Time—Authority Implied.**

  An attorney employed simply to collect a note has no authority to extend the time for its payment so as to release the other parties bound thereon, or to do any act which will jeopardize his client's interest. An attorney can only collect in cash, and, without express authority or conduct equivalent to authority, cannot temporize with the debtor to the prejudice of the creditor.

2. **Same.**

  An accommodation paper with sureties was deposited by the payee with a bank as collateral to a note given the bank for a loan to him. At the request of one of the sureties, the maker of the collateral note gave a chattel mortgage to the payee thereof. to secure the debt and indemnify the sureties, which was duly registered. The bank sent the note made to it, with the collateral, to an attorney for collection, who allowed the maker of the collateral note several days in which to sell the mortgaged chattels and pay the note, but subsequently sold them under the mortgage and applied the proceeds to the payment of the note, which proved to be insufficient for the purpose: *Held*, the act of the attorney in granting the maker of the collateral note time in which to sell the mortgaged chattels and pay the note did not operate as a discharge of any of the parties.

3. **Attorney and Client—Principal and Agent—Waiver of Client's Rights—Ratification—Estoppel.**

  As a general rule, an attorney cannot waive any of the substantial rights of his client without the latter's consent, and he is not bound by the attempted waiver, unless there be a ratification, or something which amounts to an estoppel.

APPEAL by defendants from *Long, J.,* at Spring Term, 1911, of WATAUGA.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*No counsel for plaintiff.*
*Edmund Jones for defendant.*

WALKER, J. There is but one question in this case. On 5 November, 1906, G. W. Presnell made his note to W. G. Hall

for $135.96, payable 1 May, 1907, and indorsed by W. W. Presnell and E. F. Lovell as sureties. This note was deposited by Hall with the Bank of Blowing Rock, as collateral security for a debt he owed the bank. Presnell, at the request of Lovell, gave a mortgage to Hall for $120.70 on a pair of horses, to secure the debt and indemnify his sureties, and it was duly registered. The note and mortgage were placed in the hands of an attorney for collection and he immediately pressed the defendants for payment. Lovell requested the attorney to take immediate steps to secure possession of the horses, for the purpose of selling them, we assume, under the power contained in the mortgage, and gave him $5 to pay his expenses. The attorney demanded the horses of Presnell, the debtor, who asked indulgence for several days, so that he might dispose of the horses and pay the debt, which was granted, and Presnell paid the attorney $5 for his expenses. The attorney afterwards sold the horses, but did not realize enough to pay the debt, and meanwhile Presnell left the State. W. G. Hall had no knowledge of the transactions between the attorney of the bank, and of course did not authorize the extension of time, nor did the bank. It was simply a slight accommodation given by the attorney to Presnell on his own responsibility, and without any express authority or any ratification afterwards of his act. It does not appear whether or not Presnell was solvent at the time the attorney granted the slight indulgence to him, and has remained so to this time, nor does it appear distinctly that the attorney extended the time for paying the debt, but it rather appears that the short extension was restricted to the time of seizing and selling the horses under the mortgage. Upon the facts admitted by the parties, the court rendered judgment for the plaintiff, and the defendant Lovell appealed.

We think the decision of the court below was right. It is not clear to us how the appellant was injured by the transaction of which he complains, but assuming that it was such an extension of the time for paying the note as would have discharged him, as surety, if it had been given by the plaintiff, we are of the opinion that the attorney had no express or implied authority to bind his client, the bank, or Hall, the payee, by the agree-

ment. He was retained to collect the debt and not to release it or any party liable to Hall or the bank for its payment, and any one dealing with him was fixed, in law, with notice of this lack of authority. As said in *Bank v. Hay,* 143 N. C., 326: "There is a general rule that, when one deals with an agent, it behooves him to ascertain correctly the scope and extent of his authority to contract for and in behalf of his alleged principal, for under any other rule, it is said, every principal would be at the mercy of his agent, however carefully he might limit his authority. The power of an agent is not unlimited unless in some way it either expressly or impliedly appears to be so, and the person who proposes to contract with him as agent for his principal should first inform himself where his authority stops or how far his commission goes, before he closes the bargain with him. *Biggs v. Insurance Co.,* 88 N. C., 141; *Ferguson v. Mfg. Co.,* 118 N. C., 946."

No one could reasonably suppose that it was within the scope of an attorney's authority to release a debt or any party to a note, or to do anything which would have that effect, when his commission extended only to the collection of the debt. It is stated in the books that an attorney has no implied authority to work any discharge of a debtor but upon actual payment of the full amount of the debt, and that in money. He cannot release sureties or indorsers nor enter a *retraxit,* when it is a final bar (*Lambert v. Sanford,* 3 Blackford, 137), nor release a witness (*Ward v. Hopkins,* 2 Pen. (N. J.), 689; *Campbell v. Kincaid,* 3 Mon., 566), nor a party in interest (*Succession of Wright,* 18 La. Ann., 49). It is a general rule that an attorney, who in many respects is considered as a mere agent, cannot waive any of the substantial rights of his client without the latter's consent, and in such a case he is not barred thereby without ratification, or something which amounts to an estoppel, to deny his attorney's authority. These principles will be found to be sustained by the following authorities: Weeks on Attorneys, sec. 219, and cases cited in the notes; *Savings Inst. v. Chinn,* 70 Ky. (7 Bush.), 539; *Ireland v. Todd,* 36 Me., 149; *Givens v. Briscoe,* 3 J. J. Marsh. (Ky.), 529; *Union Bank v. Goran,* 10 Sm. and M. (Miss.), 333, and cases cited; *Tankersley v. Caruth,* 4 So.

Ca. (4 Des. Eq.), 44; *Terhune v. Cotton,* 10 N. J. Eq. (2 Stock. Ch.), 21. It was directly held in *Roberts v. Smith,* 3 La. Ann., 205, that an attorney at law, in whose hands a note has been placed for collection, has no power, by an agreement made out of court without authority of his client, to give an extension of time to the principal obligor which would have the legal effect, if the act were valid, to relieve or discharge a surety on the note. Of like effect is *Varnum v. Bellamy,* 4 McLean, 87 (*s. c.,* 28 Fed. Cases, p. 1096, No. 16), 886. In *Savings Inst. v. Chinn, supra,* it was held to be well settled that an attorney at law, employed to collect a debt, has not authority to release the sureties upon his client's claim, either directly or indirectly, nor to do any act, with reference thereto, prejudicial to his interest. "No implied power (of an attorney) exists, under a general retainer, to grant additional time to his client's debtor" (4 Cyc., 945), "nor has an attorney the implied power to release his client's claim, and where there is security for the demand, he cannot surrender it to his client's detriment, nor has he implied authority to release sureties on an obligation to his client." 4 Cyc., 949, and the numerous cases cited. In *Kellogg v. Gilbert,* 10 Johns., 220, the sheriff, upon the request of the plaintiff's attorney, permitted the defendant, in custody on a *ca. sa.,* to go at large for the purpose of securing money with which to pay the debt. It was held that the attorney had no authority to order the release of the defendant without the plaintiff's consent or a previous satisfaction of the debt, and that the sheriff was, therefore, liable for an escape. See, also, *Lewis v. Gamoge,* 18 Mass. (1 Pick., 2 Ann. Ed.), 346, and cases cited; *Simonton v. Barrell,* 21 Wendell, 362; *Jackson v. Bartlett,* 8 Johnson (3 Ed.), marg. p. 361. *Justice Patteson* said, in *Savory v. Chapman,* 39 E. C. L., 242 (11 Ad. Ell., 829): "It is clear that the attorney could not, of his own authority, without payment, discharge the defendant out of custody as a matter of indulgence; nor indeed is it contended that he could. Either the money must have been actually paid or the plaintiff (himself) must have chosen to show favor; that would be his act. The plea does not allege either fact. It is true that if the attorney has power to receive the money, he may, having received it, order a

discharge; but then, in pleading the discharge, it should be shown that the money was paid. So if the plaintiff chose to dispense with the further detention, it should have been alleged that he authorized the attorney to discharge," and *Justice Coleridge*, in the same case, said: The party "is bound to know the legal qualifications of persons filling certain employments. The question, therefore, turns on the authority of the attorney; and there is nothing here to show that he had any, either in his general character or with reference to the circumstances of the suit. He could, as it appears here, be only an agent *de facto;* and there is nothing shown to make him one for the present purpose." It seems, therefore, to be the generally accepted doctrine that an attorney, charged with the collection of a debt, has no power, in virtue of his general authority, to do any act which will either release his client's debtor or his surety, or substantially jeopardize his interests in any way.

The cases cited by the learned counsel of the appellant are not in point. There the question was as to the authority of an attorney, in the actual conduct of a suit in court, whether in prosecution or defense, and in matters of practice and procedure, as in *Black v. Bellamy,* 93 N. C., 129, the case cited by appellant's counsel. *Chief Justice Smith* thus refers to the subject: "The conduct of the case by caveators' counsel would, in the absence of connivance, be binding upon their clients, and it would be a dangerous innovation in judicial proceedings to hold otherwise. In the words of *Nash, J.,* in reference to the authority of counsel retained in a case: 'By his acts and agreement made in the management of the cause, the plaintiff was bound.' *Greenlee v. McDowell,* 39 N. C., 485. Not less explicit is the language of *Merrimon, J.,* in *Brahn v. Walker,* 92 N. C., 89, where he says of an attorney that, 'as soon as he is duly retained in an action or proceeding, he has, by virtue of his office, *authority to manage and control the conduct of the action* on the part of his client during its progress, and subject to the supervision of the court.' 'As between the client and the opposite party, the former is bound by every act which the attorney does in the regular course of practice, and without fraud or collusion, however injudicious the act may be.' Weeks on Att., sec. 222,

and cases cited." We add *Pierce v. Perkins,* 17 N. C., 250. But this is far from saying that he can release a debt or any part of it, or relinquish substantial or important rights, without the consent of his client. An attorney cannot compromise his client's case without special authority to do so (*Moye v. Cogdell,* 69 N. C., 93), and this being so, how can he release it, or any part of it? "A power to collect," says this Court, "does not authorize an assignment or any disposition other than full payment." *Bradford v. Williams,* 91 N. C., 7.

Nor do we think the case of *Kesler v. Linker,* 82 N. C., 456, cited also by counsel, is pertinent to this case. There is no evidence that the plaintiff agreed to look after the security and see that it is applied to the debt. On the contrary, he did not know that the mortgage or lien on the horses had been taken, nor does it appear that the attorney, whether he had authority or not to act in that behalf for his client, made any agreement which bound the plaintiff to active diligence for the preservation of the security. Nor does it appear that the security or any part thereof has been lost or impaired. The horses were seized, sold, and the proceeds applied to the debt. What more could the surety ask to be done?

Our conclusion is that the defendant Lovell, as surety to the note, was not discharged by anything done by the attorney, nor did the latter intend to release him.

No error.