EDGEWOOD KNOLL APARTMENTS, INC., v. M. P. BRASWELL, SR., AND M. P. BRASWELL, JR., DOING BUSINESS AS M. P. BRASWELL AND SON, AND UNITED STATES CASUALTY COMPANY, A CORPORATION.

(Filed 17 March, 1954.)

**1. Appeal and Error § 29—**

Assignments of error not brought forward in the brief and in support of which no reason or argument is stated or authority cited, are deemed abandoned. Rules of Practice in the Supreme Court No. 28.

**2. Appeal and Error § 39e—**

The refusal to admit in evidence portions of a complaint filed by the same plaintiff in another action against a different defendant relating to damages sustained by plaintiff will not be held for prejudicial error when it appears that defendants had the benefit of evidence showing that such other suit was pending and what was alleged in the paragraph in dispute, and that the trial court explicitly limited plaintiff's recovery to such damages as were caused by defendants' breach of the contract in suit and excluded any damages relating to the breach of another contract by the defendant in the other suit.

**3. Principal and Agent § 7a—**

In order for defendant to show that the contract in suit had been modified by plaintiff's agent, he must show that such person was in fact the agent of plaintiff, and also that the agent was clothed with actual authority to vary the terms of the contract, or apparent authority to do so, as being within the scope of his duties.

**4. Same: Corporations § 20—**

The vice-president of a corporation owning lands was also the president of a company contracting to erect a building thereon. Evidence that he authorized a subcontractor to substitute material in the performance of the subcontract *held* properly excluded as against the owner, when the other evidence discloses that the scope of his duties in respect to the project was that of principal contractor and was not that of representative of the owner.

**5. Trial § 31e—**

The mere fact that the court takes longer in stating the contentions of plaintiff than those of defendants is not ground for a new trial, the test

EDGEWOOD KNOLL APARTMENTS *v.* BRASWELL.

being whether the court gives equal stress to the contentions of the respective parties.

**6. Appeal and Error § 6c (5)—**

An exception to the charge which fails to point out in what particular the alleged error was committed is ineffectual as a broadside exception.

**7. Appeal and Error § 6c (6)—**

Objection to the statement of contentions must be brought to the court's attention in apt time in order for an exception thereto to be considered on appeal.

**8. Principal and Surety § 8—**

A contractor's performance bond must be read in the light of the contract it is given to secure, and the extent of the engagement entered into by the surety is to be measured by the terms of the principal's agreement.

**9. Same—**

A provision in a subcontractor's performance bond that suit thereon should not be maintained unless brought within 12 months from the completion of the contract relates to the full performance of the contract by both parties and not to the date of the completion of the work, and the contract being bilateral, it is not completed until the project has been completed and approved, and final payment made thereunder, and action brought within 12 months thereafter is not barred.

**10. Same—**

Where, in an action on a subcontractor's performance bond, the surety's answer admits that plaintiff owner forwarded to the surety a copy of a letter to the subcontractor alleging certain defaults by the subcontractor in the performance of the work, the surety's motion to nonsuit on the ground that the owner did not give it written notice of default is properly denied.

**11. Appeal and Error § 7—**

Motion of appellant in the Supreme Court to be allowed to amend its pleading will not be allowed when upon the facts of the record the ends of justice will not be promoted by the granting of the motion.

**12. Principal and Surety § 8: Assignments § 2—**

Where the performance bond of a subcontractor provides that it should not be assignable without the written consent of the surety, the introduction in evidence of the bond with a written assignment by the owner of all its right, title and interest in the bond to the bank as security, together with testimony of an officer of the bank that the bank handled the construction loan but that it had no interest in the bond, and that the surety had not consented to the assignment, *is held* to disclose that the assignment was not completed, and the surety's motion to nonsuit the owner's action on the ground that it was not the real party in interest is properly denied.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by defendants separately from *Phillips, J.,* at May Civil Term, 1953, of BUNCOMBE, to Fall Term, 1953, of Supreme Court,—carried over to Spring Term, 1954.

Civil action instituted 29 November, 1951, to recover for breach of contract for the faithful performance of which defendants executed bond.

These facts appear from the pleadings to be uncontroverted:

1. On 19 October, 1949, the plaintiff herein, a corporation organized and existing under and by virtue of the laws of the State of North Carolina, with its principal office and place of business at Asheville, North Carolina, as party of the first part, and the defendants herein, M. P. Braswell, Sr., and M. P. Braswell, Jr., doing business as M. P. Braswell and Son, of Charlotte, North Carolina, hereinafter referred to as Braswell, as party of the second part, "in consideration of the promises and . . . of the sum of $10.00 each to the other paid," entered into a written contract by the terms of which Braswell agreed to furnish all labor, materials and equipment to do the lathing and plastering in all buildings in a 166-unit apartment project then being erected by plaintiff on the western margin of Merrimon Avenue in Asheville.

2. The material parts of the contract so entered into between plaintiff and Braswell are as follows: (1) Braswell agreed to install and complete the lathing and plastering "in the manner provided in the plans and specifications of said project prepared by William G. Lyles, *et al.,* Architects of Columbia, South Carolina, for FHA Project No. 153-42029, dated September 28, 1949." (2) Braswell to furnish to plaintiff "a satisfactory surety performance bond . . ."; (4) The contract price for the entire lathing and plastering was $79,200.00, payable as specified, the balance to be paid "when apartment project has been completed and approved and final disbursements made under the FHA loan"; . . . (7) Braswell "to secure written permission to substitute or to make variations from the plans and specifications from William G. Lyles, Bissett, Carlisle and Wolfe, Architects,—copies of such . . . to be sent" to plaintiff; . . . (10) Braswell guarantees in the signing of the contract, "that the lathing and plastering shall be installed in a thorough manner by experienced labor and shall be approved by the FHA project inspector; and shall be responsible for defects which develop due to faulty workmanship and shall replace any such defects due to faulty workmanship during the period of one year from date of final acceptance of the work at no charge of the party of the first part. Final acceptance and payment in full for such work will not waive any of this guarantee."

3. On 26 October, 1949, defendants Braswell, as principal, and defendant United States Casualty Company, a corporation of the State of New York, called the surety, as surety, executed to plaintiff as obligee, a bond in the sum of $79,426.00, as the maximum liability thereunder, for the payment of which "the principal and the surety bound themselves, their— and each of their—heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents." And the bond recites

that: "Whereas the principal has entered into a written contract dated October 19th, 1949, with the obligee for furnishing *all* labor, materials, and equipment necessary to do the lathing and plastering in the buildings of a 166-unit apartment project on the western margin of Merrimon Avenue, Asheville, North Carolina, in accordance with certain plans and specifications prepared by William G. Lyles, *et al.,* Architect; which contract, plans and specifications are hereby made a part hereof." And the bond provides: That "the condition of this obligation is such, that if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal faithfully to perform said contract, then this obligation shall be void; otherwise to remain in full force and effect: *Provided,* however, that this Bond is executed and accepted upon the following express conditions, each of which shall be a condition precedent to any right of recovery hereon, anything in the contract to the contrary notwithstanding": (Pertinent portions are as follows):

"First: That in the event of any default on the part of the Principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety by registered mail, at its office in the city of New York, New York, promptly and in any event within ten (10) days after the Obligee or his representatives, or the Architect, if any, shall learn of such default . . ."

"Second: That no suit, action or proceeding for recovery hereunder by reason of any default whatever shall be had or maintained on this Bond unless the same shall be brought within twelve (12) months from the date fixed in such contract for its completion, or if no date is fixed in said contract for its completion, then within twelve (12) months from the date of actual completion of said contract or within twelve (12) months from the date of default, whichever shall have first occurred." . . .

"Sixth. That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of anyone other than the Obligee herein named; and that the obligation of the surety is, and shall be construed strictly as one of suretyship only; that this Bond shall be executed by the Principal before delivery, and that it shall not, nor shall any interest therein or right of action thereon, be assigned without the prior written consent of the surety, duly executed by its president or one of its Vice-Presidents and the corporate seal affixed thereto, duly attested by its secretary or one of its assistant secretaries."

4. After the execution of the contract and the bond, as aforesaid, Braswell undertook to carry out the terms of the contract, and pursuant thereto, furnished certain labor, materials and equipment, and performed said work in connection with the construction of said apartment units as in said contract more particularly referred to.

. . And plaintiff in its complaint makes these allegations: In paragraph "7": That Braswell "breached the terms of said contract in that they failed and neglected to do the work in accordance with the plans and specifications as in said contract provided, and used certain materials contrary to the terms and provisions of said contract and plans and specifications, and failed to properly perform the work in the manner as therein provided for, as a result of which the work was defective and faulty."

In paragraph "8": That by reason of Braswell "failing to use the proper materials as specified in the plans in the bathrooms, which they plastered in said apartment units, the said walls, tile and plaster thereon were left in such condition that the tile has fallen off said walls and away from said plaster in practically all of said bathrooms, and plaster cracks have developed throughout the entire units and to such an extent that said bathrooms, in many instances, cannot be used, and the buildings have been greatly damaged by the use of said improper and faulty workmanship."

In paragraph "9": "That the work performed by" Braswell, "under the terms of said contract, is of such condition and character, due to the use of improper materials and faulty workmanship, that the project inspector of the Federal Housing Administration has refused to approve the same, in express violation of paragraph 10 of the contract above referred to."

In paragraph "10": "That as a result of the breach of said contract and the failure to perform the same on the part of said" Braswell, "this plaintiff has been damaged in the sum of $25,000.00." (Amended to read $75,000.00.)

In paragraph "11": "That written notice has been given to defendants" Braswell, "and to the defendant United States Casualty Company of the default by the said" Braswell, "in the performance of said contract, and demand has been made upon said defendants for the performance and completion of said contract, but that said defendants, and both of them, have failed, neglected and refused to take any steps whatever in making said contract good or paying the loss resulting therefrom."

And in paragraph "12": "That by reason of the matters and things hereinbefore set forth, the defendants are indebted to the plaintiff, under the terms of said surety bond, as above referred to in the sum of $25,-000.00." (Amended to read $75,000.00.)

Upon these allegations, in connection with the uncontroverted facts, hereinabove set forth, plaintiff prays judgment.

The defendants Braswell answering deny the allegations of the complaint above set forth, except they aver "that pursuant to certain circumstances as hereinafter more fully set forth, certain materials were substi-

tuted for materials specified by the referred to contract, plans and speci-
fications"; and they admit in paragraph 11 of their answer "that the
plaintiff wrote a letter to these defendants alleging certain defaults by
them in the performance of the contract in question . . ."

And for a further answer and defense defendants Braswell say: "1.
. . . That the general contractor on such work was Robinson Brothers,
Inc., the president of which was Z. B. Robinson, who likewise was an
officer of the plaintiff herein, to wit, its Vice-President; that all the con-
struction work in connection with the erection of the apartments of the
plaintiff was done under the express direction and control of Robinson
Brothers, Inc., and particularly its duly authorized officer and agent, said
Z. B. Robinson; that in lathing and plastering the bathrooms of the 166-
apartment units in question, these defendants, by and with the consent
and approval of the general contractor and of the plaintiff herein, and
. . . of the project inspector of the Federal Housing Administration,
supplied vermiculite as aggregate in lieu of sand for the base coat of
plaster; that the material so installed was installed by careful and prudent
workmanship rendering it completely adaptable for covering over by tile
or other final wall-surfacing material; that in the event any tile or other
final wall-surfacing material has proved faulty, such defects are solely
attributable to the workmanship of the contractor or contractors install-
ing such tile or other final wall-surfacing material and in no part due to
any default on the part of these defendants.

"2. That the project . . . was finally completed on or about August
15, 1950, was on or about such date approved by the project inspector
of the Federal Housing Administration, and at or about such time the
work of these defendants was accepted by the plaintiff.

"3. That pursuant to the terms of paragraph 10 of the . . . contract,
these defendants by reason of the lapse of more than one year from the
date of completion, approval and acceptance of the work performed by
them under such contract are relieved of all further and additional re-
sponsibility to the plaintiff on such account, and that by reason of the
knowledge and approval of the plaintiff and its general contractor of the
substitution of plastering materials, waived any provisions contained in
the said contract, plans and specifications prohibiting the substitution of
materials, and accordingly are now estopped from making any claims or
demands against these defendants on account of such substitution."

And the defendant, United States Casualty Company, answering, denies
in material aspect the allegations of the complaint above set forth, but it
admits in paragraph 11 of its answer that the plaintiff forwarded to it a
copy of a letter addressed to defendants Braswell, alleging certain defaults
by them in the performance of the contract in question.

And, for a further answer and defense, the defendant United States Casualty Company invokes the provisions of paragraph 2 of the contract bond entered into 26 October, 1949, and avers that by the terms thereof the bond had expired, by reason of the lapse of time specified as constituting its effective term, prior to the institution of this action by plaintiff; and, further avers, that although the contract between plaintiff and Braswell specified no date for the completion of such contract, the contract was in fact completed on or about August 15, 1950, and the work thereunder approved by the Federal Housing Administration and accepted by the plaintiff on or about said date; "that summons having issued in this action on November 29, 1951, more than twelve months had elapsed from the date of the alleged default by the defendants" Braswell, and, "accordingly, any action against this defendant is barred."

Upon trial in Superior Court, plaintiff offered in evidence (1) the original summons issued 29 November, 1951, and served 30 November, 1951; (2) portions of the pleadings covering the uncontroverted facts above set forth; (3) the admissions shown in the answers; (4) a copy of the contract of 19 October, 1949, and (5) a copy of the bond of 26 October, 1949. Portions of both the contract and the bond are hereinabove set out.

Plaintiff also offered in evidence plans and specifications bearing date 28 September, 1949, identified as Exhibit P-6 and as those referred to in the contract of 19 October, 1949, between plaintiff and Braswell. Pertinent portions of specifications shown in this Exhibit P-6 are these:

"12.07 *Plastering:* a. Materials: (1) Materials shall conform to the following specifications of the American Society of Testing Material: Sand—C35-39: Finished hydrated lime—C206-46T; Gypsum plaster—C28-40; Keene's Cement—C61-40; Sandplaster—C28-40; i. Application of Finish . . . (4) Keene's Cement Finish shall be applied over a thoroughly set base coat which is nearly, but not quite dry, scratched in thoroughly, laid on well, doubled back and filled out to a true even surface. The thickness shall be from 1/16″ to 1/8″. The finish shall be allowed to dry a few minutes, and then it shall be well troweled with water to a smooth finish, free from cat faces and other blemishes. . . .

"12.09. Alternate. If desired, vermiculite may be used as aggregate in lieu of sand for the base coat of plaster in all spaces except baths . . ."

And plaintiff further offered evidence tending to support the allegations of its complaint as hereinabove set forth. Sufficient and appropriate portions of the evidence will be quoted hereinafter in treating of assignments of error.

Defendants, reserving exceptions to the denials of their respective motions for judgment as of nonsuit made when plaintiff first rested its case, offered evidence tending in part to support their denial of allegations of

the complaint, and of averments otherwise made in their respective answers are hereinabove shown. And while defendants Braswell admit the use by them of vermiculite base in the bathrooms, they do not offer any evidence that they "secured written permission to substitute or to make variations from the plans and specifications" from the architects as agreed in the contract.

Motions of defendants respectively made at the close of all the evidence for judgment as of nonsuit were overruled, and each of them excepted.

Defendants in apt time tendered thirteen issues. And each of them excepts "to the refusal of the court to submit each and every of the issues as tendered . . . and not submitted by the court." Exceptions Nos. 56 and 57.

These issues, as settled by the court, were submitted to, and answered by the jury as shown:

"1. Did the plaintiff and the defendants Braswell, trading and doing business as M. P. Braswell and Son, enter into the contract for construction work at Edgewood Knoll Apartments, Inc., as alleged in the complaint? Answer: Yes.

"2. Did the defendants M. P. Braswell, Sr., and M. P. Braswell, Jr., trading and doing business as M. P. Braswell and Son, breach the contract entered into with the plaintiff, as alleged in the complaint? Answer: Yes.

"3. Did the defendants M. P. Braswell and Son and United States Casualty Company execute and deliver the bond dated the 26th day of October, 1949, to the plaintiff, as alleged in the complaint? Answer: Yes.

"4. Did the plaintiff notify the defendant United States Casualty Company in writing of the alleged default of the said M. P. Braswell, Sr., and M. P. Braswell, Jr., trading and doing business as M. P. Braswell and Son, as required by the bond? Answer: Yes.

"5. Did the plaintiff commence this action within twelve months from the date of the last payment by the plaintiff to M. P. Braswell and Son, as alleged in the complaint? Answer: Yes.

"6. What amount of damages, if any, is the plaintiff entitled to recover of the defendants? Answer: $30,000.00."

Defendant United States Casualty Company objected, and excepts to the issues as settled and submitted by the court. Exception No. 58.

Defendant Casualty Company moved the court that defendant be allowed a credit of $7,960.00 on the verdict as rendered by the jury on the sixth issue "for that from all the evidence, and as a matter of law, it appears that said amount of $7,960.00 represented that proportion of the value of all work performed or materials furnished in the prosecution by the defendants Braswell and Son of their construction contract with the plaintiff, and represents the amount which the plaintiff, as obligee in the

bond, should have retained, but did not, until the complete performance by the defendants Braswell and Son of all the terms, covenants and conditions of said building contract on their part, to be performed, the plaintiff, as obligee under the bond, having paid said amount to the defendants Braswell and Son as principals under the bond, in violation of Condition Fourth, appearing in said bond." The motion was denied. Exception No. 116.

And Porter B. Byrum as Trustee in Bankruptcy of M. P. Braswell, Sr., and M. P. Braswell, Jr., doing business as M. P. Braswell and Son, having been made a party defendant and appellant and authorized to prosecute this appeal to the Supreme Court of North Carolina, by order of the *Chief Justice* of the Supreme Court, adopted as his own the case on appeal as tendered by defendants Braswell, and joined in stipulation that the case on appeal shown in the record is the case on appeal as settled by the judge.

Judgment was signed and entered in favor of plaintiff against the defendants in accordance with the verdict of the jury.

To the signing and entry of the judgment the defendants respectively object and except, and appeal to the Supreme Court and assign error.

*Harkins, Van Winkle, Walton & Buck for plaintiff, appellee.*

*Chas. G. Lee, Jr., and Cochran, McCleneghan & Miller for defendants Braswell and Byrum, appellants.*

*Meekins, Packer & Roberts for defendant Casualty Company, appellant.*

WINBORNE, J. The record and cases on appeal of the defendants, now before the Court, comprise three hundred sixty-one pages, of which eighty-one are devoted to a grouping of assignments of error. The appellants Braswell set forth sixty-eight assignments of error based upon exceptions taken during the course of the trial, and to the charge as given to the jury, to denial of request for instruction and to failure to charge as required by G.S. 1-180 as amended, and in brief filed preserve twenty-eight of them. The remaining forty are not mentioned in the brief, nor is any reason or argument stated, or authority cited in support of them and, hence, are deemed to be abandoned. See Rule 28 of the Rules of Practice in the Supreme Court of North Carolina, 221 N.C. 544 at 562, which is uniformly applied on appeals to this Court. And appellant United States Casualty Company sets forth one hundred seven assignments of error based upon exceptions taken during the course of the trial, and to the charge as given to the jury, to denial of request for instruction, and to failure to charge as required by G.S. 1-180, as amended, and in brief filed preserves fifty of them. The other fifty-seven are not men-

tioned in the brief, nor is any reason or argument stated, or authority cited in support of them, and, hence, under the above rule, are deemed to be abandoned.

## APPEAL OF DEFENDANTS BRASWELL:

At the outset it may be noted that though the defendants Braswell entered exceptions to the denial of their motions aptly made for judgment as of nonsuit, their assignments of error based thereon are among those abandoned as above recited. Indeed, a reading of the evidence offered by plaintiff, including admissions by Braswell in their answer, and orally upon the trial, all as shown in the record and case on appeal, discloses sufficient evidence to take the case to the jury upon the issues raised by the pleadings, and to support a verdict against them for breach of contract as alleged in the complaint.

However, Braswell does present for consideration assignments of error which merit express consideration.

I. Assignments of error Numbers 3, 4, 25, 26 and 27, based upon exceptions Numbers 5, 6, 40, 41 and 42, relate to the refusal of the court to permit Braswell "to introduce in evidence the complaint and portions thereof in an action pending in Superior Court of Buncombe County" brought by plaintiff here against Robinson Brothers Contractors, Inc., and St. Paul Mercury Indemnity Company of St. Paul, defendants. In respect thereto, the case on appeal discloses that Richard L. Coleman, President of plaintiff corporation, under cross-examination by counsel for Braswell, testified that such a suit was pending, and he identified the complaint, verified by him, and filed in court in such action. Then he was asked about the language of paragraph 9 of that complaint. Objection thereto was sustained.

But, after argument in the absence of the jury, and the jury having returned, the witness answered: "Yes, I alleged in the complaint and swore to it in paragraph 9": Then follows what purports to be the wording of paragraph 9. The witness, explaining, said: "When I say buildings, I mean the buildings constructed and erected by Robinson Brothers . . . the same apartment project that I am referring to in this suit against Braswell."

And when Braswell was introducing evidence the complaint so identified by the President of plaintiff corporation was offered, and, upon objection, excluded. Likewise the caption of the complaint and paragraph 9 were offered, and upon objection, were excluded.

The point is made that the complaint, and paragraph 9 so offered, would disclose that plaintiff is there charging that Robinson Brothers, the general contractors, failed to construct the buildings in accordance with the plans, resulting in the roofs of the buildings leaking, and thereby

damaging the plaster and other parts of the inside of the buildings. But defendant has the benefit of the fact that a suit against Robinson Brothers was pending, and of what is alleged in paragraph 9 of the complaint therein.

True, it is a rule of evidence that if a party in one action admits a fact in his pleading, such admission is usable against him as an evidential admission in another action between the same or different parties. See Stansbury's North Carolina Evidence, Sec. 177; also *Grant v. Gooch,* 105 N.C. 278, 11 S.E. 571; *Middleton v. Hunter,* 195 N.C. 418, 142 S.E. 325; *Hotel Corp. v. Dixon,* 196 N.C. 265, 145 S.E. 244; *Odom v. Palmer,* 209 N.C. 93, 182 S.E. 741. However, it does not appear here that the matters to which these assignments relate are violative of this rule.

Indeed, it is not deemed that defendant has been prejudiced by the rulings made by the trial court. For a reading of the charge discloses that the trial court expressly instructed the jury "that the plaintiff can recover only such damages as it has proven by the greater weight of the evidence was caused by the breach of the contract on the part of the defendants Braswell, and for none other."

II. Assignments of error Numbers 29, 30, 31, 32, 33 and 34, based upon exceptions Numbers 44, 45, 46, 47, 48 and 49 respectively, are directed to the refusal of the court to permit defendants Braswell to introduce evidence tending to show that Zeb V. Robinson, Vice-President of the plaintiff, agreed that vermiculite might be used in lieu of sand-plaster in the bathrooms.

While the evidence discloses that Robinson was President of Robinson Brothers Contractors, who had the general contract with plaintiff for the construction of the project here involved, and that he was Vice-President of the plaintiff corporation, appellee contends, and we hold properly so, that there is no evidence that Robinson was an agent of plaintiff for the purpose of varying, and clothed with authority to vary the terms of the written contract between plaintiff and Braswell.

In order for such evidence to be competent, defendants were required to show two things, first, that Robinson was an agent of plaintiff corporation for this purpose, and, second, that he was clothed with authority to vary the terms of the contract. See *Biggs v. Ins. Co.,* 88 N.C. 141; *Ferguson v. Mfg. Co.,* 118 N.C. 946, 24 S.E. 710; *Land Co. v. Crawford,* 120 N.C. 347, 27 S.E. 31; *Willis v. R. R.,* 120 N.C. 508, 26 S.E. 784; *Bank v. Hay,* 143 N.C. 326, 55 S.E. 811; *Floars v. Ins. Co.,* 144 N.C. 232, 56 S.E. 915; *Thompson v. Power Co.,* 154 N.C. 13, 69 S.E. 756; *Hall v. Presnell,* 157 N.C. 290, 72 S.E. 985; *Bank v. McEwen,* 160 N.C. 414, 76 S.E. 222; *Wynn v. Grant,* 166 N.C. 39, 81 S.E. 949; *Jones v. Ins. Co.,* 216 N.C. 300, 4 S.E. 2d 848.

EDGEWOOD KNOLL APARTMENTS *v.* BRASWELL.

The thread of decision in these cases is aptly expressed by *Ruffin, J.,* in the *Biggs case, supra,* in this fashion: "When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however carefully he might limit his authority." To this the writer added: "It is true the power and authority of an agent may always be safely judged by the nature of his business and will be deemed to be at least equal to the scope of his duties." Testing the power and authority of Robinson by the nature of his business, the evidence discloses that even though he was Vice-President of plaintiff corporation, the nature of his business in respect to the project at Edgewood Knoll was that of principal contractor under contract with plaintiff corporation for the construction of the 166-building units. The scope of his duties in this respect is not that of representative of the principal. Rather the evidence tends to show that the President of plaintiff was its representative.

III. Assignments of error Nos. 65 and 66, based on Exceptions Nos. 113 and 114, are directed to alleged failure of the trial court "to state in a plain and clear manner the evidence in the case and declare and explain the law arising thereon as required by G.S. 1-180."

This statute G.S. 1-180 was rewritten by Chapter 107, Session Laws 1949, and as so rewritten declares in pertinent part that the judge, in giving a charge to the petit jury, "shall declare and explain the law arising on the evidence given in the case." But "he shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; provided the judge shall give equal stress to the contentions of the plaintiff and defendant in a civil action . . ."

In the case in hand the exceptions taken are, No. 113, that "the court failed to sum up for the jury an array of the facts arising on the evidence the circumstances under which the jury should have, as a matter of law, answered the second issue No"; and No. 114, that "the court failed to state the contentions of the defendants Braswell with the impartiality as required by law, and emphasized the contentions of the plaintiff throughout the charge with a heavy over-balance in the plaintiff's favor, and to the prejudice and injury of the defendants Braswell."

The chief argument advanced is that the case on appeal discloses that the trial judge devoted more words, as shown by the number of printed lines, in stating contentions of plaintiff than in stating those of defendants. This is not the test. It is a question whether the judge gives "equal stress" to the contentions of the plaintiff and of the defendant. Otherwise than as above stated appellants Braswell fail to point out wherein the judge failed to give "equal stress." The exceptions are broadside, and, too, objection was not made at the time, and will not now be entertained.

See *Poniros v. Teer Co.*, 236 N.C. 145, 72 S.E. 2d 9. Indeed, the record fails to disclose that unequal stress, or emphasis was displayed by the trial judge in stating the contentions of the respective parties.

Defendants Braswell also assign as error portions of the charge as given, refusal to charge as requested, the exclusion of evidence offered, denial of motion to strike answer of witness, and denial of formal motions. These have been considered, and express treatment of each is deemed unnecessary since no prejudicial error is made to appear.

Therefore, on the Braswell appeal, we find

No error.

### APPEAL OF UNITED STATES CASUALTY COMPANY:

The appellant Casualty Company brings forward among others its assignments of error Numbers 39 and 54, based upon exceptions Numbers 39 and 55 taken to denial of its motions aptly made for judgment as of nonsuit.

While it does not debate or question the sufficiency of the evidence to support a finding that defendants Braswell breached their contract in the respects alleged in the complaint, U. S. Casualty Company advances three grounds upon which it contends that it is entitled to judgment as of nonsuit.

It is contended (1) that plaintiff's action was not commenced within the time limited in the second condition of the bond, as pleaded in its further answer and defense; (2) that plaintiff did not give notice as required in the first condition of the bond; and (3) that plaintiff is not the real party in interest, as disclosed by its own evidence. These are considered *seriatim*.

In this connection it is appropriate to bear in mind: (1) That in the premises of the bond, after referring to the contract between plaintiff and Braswell and its terms, all as quoted hereinbefore in statement of uncontroverted facts, it is recited that "the contract, plans and specifications are hereby made a part hereof," that is, of the bond; and (2) that the only affirmative defense pleaded by the United States Casualty Company, in its further answer and defense, is that, under the provisions of paragraph two of the conditions of the bond, this action is barred for that it was not instituted within the time limited.

I. And this leads to consideration of the first ground above stated upon which appellant, defendant surety, relies for judgment as of nonsuit.

In *Builders Corp. v. Casualty Co.*, 236 N.C. 513, 73 S.E. 2d 155, this Court restated the well established principle in respect of a contractor's performance bond in this manner: "The obligation of the bond is to be read in the light of the contract it is given to secure. The extent of the

engagement entered into by the surety is to be measured by the terms of the principal's agreement."

Bearing this principle in mind, it is true that in the second condition of the bond it is provided that "no suit, action or proceeding for recovery hereunder by reason of any default whatever shall be had and maintained on this bond unless the same shall be brought within twelve (12) months from the date fixed in said contract for its completion . . ." And the appellee contends, and we hold rightly so, the contract between plaintiff and defendants Braswell, made a part of the bond, fixed the date for the completion of the contract, rather than the date of the completion of the work,—that the contract is bilateral, and is not completed until fully performed by both parties. It is pointed out that paragraph 4 of the contract provides that "the balance of the contract price shall be paid when apartment project has been completed and approved and final disbursements made under the FHA loan," and that the date when this occurred is made certain by the evidence offered upon the trial.

The evidence offered by plaintiff, and admissions made by Braswell upon the witness stand tend to show that this date was 19 December, 1950. As to this, the witness Charles L. Hayes, inspector for FHA, testified: "The date of the final report was on December 4, as I recall, 1950. On the basis of that report, the funds were disbursed in connection with the loan." And all the evidence tends to show, and appellant Casualty Company, in brief filed on this appeal, states that on 19 December, 1950, final payment was made by the plaintiff to the defendants Braswell in the amount of $7,960. And this action was instituted within one year thereafter, to wit, 29 November, 1951.

Authorities cited by appellant, Casualty Company, have been considered, but in the light of the interpretation of the record and case on appeal, error in this respect is not made to appear.

II. As to the second ground advanced by the appellant, defendant Casualty Company, that is, that plaintiff did not give notice as required in the first condition of the bond: It is appropriate to direct attention (a) to paragraph eleven of plaintiff's complaint, wherein it is alleged that written notice had been given to defendants Braswell "and to the defendant United States Casualty Company" of the default by Braswell in the performance of the contract, and (b) to the answer thereto by defendant United States Casualty Company, wherein it admits that plaintiff forwarded to it a copy of a letter addressed to defendants Braswell alleging certain defaults by them in the performance of the contract in question. And in brief filed in this Court the appellant, United States Casualty Company, concedes (1) that in its answer it did not plead as a defense failure to give notice, and (2) that the requirement of notice is a condi-

tion attached to the remedy, and ordinarily the breach of such condition is one to be pleaded by the defendant as a matter of defense.

Be that as it may, it appears that in the trial below the burden of proof as to the fourth issue, relating to the plaintiff giving notice, was put upon plaintiff—and the jury answered the issue in the affirmative—and there is sufficient evidence to support the finding.

In this connection it is significant that appellant, the defendant United States Casualty Company, moves in this Court to be permitted to amend paragraph 11 of its answer to the complaint by pleading as a defense failure of plaintiff to give timely and proper notice. However, this Court, in the light of the factual situation in hand, being of opinion that the ends of justice did not require it, nor would the ends of justice be promoted by the granting of the motion, denies the motion.

III. And as to the third ground for nonsuit as contended for by the appellant, defendant Casualty Company, that plaintiff is not the real party in interest as disclosed by its own evidence:

In this connection, plaintiff alleges in paragraph 5 of the complaint in respect to the bond executed by defendants Braswell as principal, and United States Casualty Company, as surety, "that a copy of said bond is hereto attached and marked 'Plaintiff's Exhibit A' and made a part hereof the same as if expressly copied herein." The U. S. Casualty Company, answering, avers that "The allegations contained in paragraph 5 are admitted." And the bond provides "that it shall not, nor shall any interest therein or right of action thereon be assigned without the prior written consent of the surety, duly executed . . ." as indicated. The copy of the bond so attached bears no endorsement or assignment.

Then in the course of the cross-examination of the President of plaintiff corporation, recalled to the witness stand, counsel for defendant, surety, inquired as to the whereabouts of the original bond, and sought to show that the bond had been assigned. The President testified that he had tried to get the surety to agree to an assignment, but it would not agree to do so; and that then he took the bond to Greensboro, N. C., and delivered it to the bank along with other papers in connection with a loan for the FHA project in question.

Following this a subpoena *duces tecum* was issued for a named vice-president, or a named assistant cashier, of Security National Bank, Greensboro, N. C., to be and appear at court at certain time to testify in behalf of defendant United States Casualty Company, and to have with him then and there before said court Standard Contract Bond, in question, "in connection with FHA 608 Project," etc. Pursuant thereto A. T. Preyer, Jr., assistant cashier of Security National Bank of Greensboro, N. C., appeared, and produced the bond that was in the bank in Greensboro. The endorsement on the back of it reads: "For valuable considera-

tion, we hereby assign all our right, title and interest in and to the within bond to Security National Bank of Greensboro and Federal Housing Commissioner. This 7th day of November, 1949. Edgewood Knoll Apartments, Inc. by Richard L. Coleman, President. Attest: F. B. Short, Secretary," with the corporate seal affixed.

And on cross-examination the witness testified: "This bond was brought down here to our bank at the time the Edgewood Knoll Apartments borrowed a sum of money through the bank for construction loan. We handled the construction loan. We have no interest whatever in this bond. We never received any assignment of the United States Casualty Company to this assignment to my knowledge, any consent to an assignment."

Manifestly, the assignment of the bond was not completed. Plaintiff had no right to assign it, without the consent of defendant surety,—and the consent was not given. Hence the point made is without merit.

The appellant, Casualty Company, brings forward in its brief assignments of error based upon exceptions relating to admission, and to exclusion of evidence, in many aspects, to the settlement and submission of the issues, to the refusal to submit issues tendered, to portions of the charge as given, to the failure of the court to charge as required by G.S. 1-180, to the failure of the court to charge as requested, to denial of motion to allow this appellant credit for last payment of $7,960.00 made by plaintiff to defendant 19 December, 1950, and to denial of formal motions. All these have been duly considered, and express treatment of each would serve only to unduly extend this opinion, since no prejudicial error in them is made to appear.

Therefore, on the Casualty Company's appeal we find no error.

On appeal of Braswell—No error.

On appeal of U. S. Casualty Company—No error.

BOBBITT, J., took no part in the consideration or decision of this case.