CAROLINA BUILDERS CORPORATION v. PALMS CONSTRUCTION COMPANY, NOW KNOWN AS SICASH BUILDERS, INCORPORATED, A VIRGINIA CORPORATION

No. 7610SC97

(Filed 16 June 1976)

Principal and Agent § 4— acts outside authority of agents — evidence properly excluded

In an action against defendant contractor to recover a sum for sheetrock and other items furnished one of defendant's subcontractors, the trial court did not err in excluding testimony concerning statements allegedly made and actions allegedly taken by defendant's superintendents, since plaintiff's evidence showed that the acts forming the basis of this action were not within the authority of the agents.

ON *writ of certiorari* to review judgment entered by *Smith, Judge.* Judgment entered 8 August 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 12 May 1976.

In this action plaintiff seeks to recover $12,418.07 plus interest allegedly due it by defendant for sheetrock and related building materials sold and delivered. Allegations of the complaint are summarized in pertinent part as follows:

In 1969 defendant was a general contractor engaged in building the Sans Souci Apartments in Raleigh and the Boulevard Apartments in Greensboro. Charles E. Swaney, trading as Guilford Plastering and Drywall Company (Swaney), was a subcontractor of defendant in the construction of both projects. Plaintiff had previously sold building materials to defendant but had had no previous business dealings with Swaney.

Defendant wanted Swaney to purchase from plaintiff building materials to be used by him in the construction of said

projects. Before plaintiff sold and delivered any materials to Swaney, defendant agreed that if plaintiff would sell materials to Swaney, defendant would be primarily liable for payment and would pay for the materials if Swaney failed to pay for them.

Pursuant to defendant's promise and in reliance thereon, plaintiff sold and delivered materials to Swaney. The balance due plaintiff for said materials, used in connection with the Greensboro project, is $12,418.07. Although plaintiff has made demand on defendant to pay said balance, it refuses to do so.

In its answer, defendant admitted that Swaney was the sub-contractor on said projects but denied making any promise that would render it responsible for the balance due plaintiff by Swaney. As a plea in bar, defendant pled the statute of frauds. In a further answer it averred that if any of its employees promised that defendant would be responsible to plaintiff for materials sold Swaney, the employees were without authority to make such promises.

The parties waived jury trial.

Plaintiff called as its first witness Claude G. Harris who testified that in 1969 he was a director and vice-president of defendant; that Maurie Portefe was employed by defendant in 1969 as superintendent or foreman in the construction of the Raleigh project; that Bob Willis was employed as superintendent or foreman of the Greensboro project; and that during that year Bill Gilmore was not an officer of defendant. On cross-examination he testified that at no time did Portefe, Nichols, Willis or Gilmore have authority to direct plaintiff to make cash advances to Swaney. On redirect examination he testified that defendant had a policy not to guarantee any supplier's account; "we never have and we never will . . ."; Gilmore had authority to execute purchase orders on behalf of defendant up to $100.

By answers to interrogatories, plaintiff established that R. A. Clary, Jr., was employed by defendant as a superintendent on the Greensboro project in 1969-70.

Plaintiff presented further evidence tending to show: When Swaney could not establish credit with plaintiff, he signed letters to defendant requesting that all checks issued to him by defendant include plaintiff's name as a payee. Defendant complied with the request and when Swaney would receive a check on the Raleigh project, Portefe would arrange with plaintiff to

pay Swaney a part of the check to provide Swaney with funds to pay his labor. Through this arrangement plaintiff collected for all materials supplied Swaney on the Raleigh project.

Portefe worked with defendant for a while on the Greensboro project and continued the practice he had followed in Raleigh regarding plaintiff and Swaney. Clary succeeded Portefe in Greensboro and continued the arrangement. Sometime later Portefe warned plaintiff that the Greensboro project was "in trouble" and plaintiff insisted on a written guarantee from defendant. Upon assurances from Nichols and/or Gilmore that a written guarantee from defendant's main office in Virginia would be forthcoming, plaintiff continued to supply Swaney with materials. The amount sued for is the balance due.

At the conclusion of plaintiff's evidence, defendant moved for involuntary dismissal pursuant to Rule 41(b) on the ground that upon the facts and the law plaintiff had shown no right to relief. The court allowed the motion.

In its judgment the court recited that in addition to allowing defendant's motion, as trier of the facts, it had also determined that judgment should be rendered for defendant on the merits and found facts summarized as follows:

During 1969 plaintiff sold drywall materials to Swaney who, under contract with defendant, did drywall work for defendant on the Sans Souci Apartments in Raleigh and on the Boulevard Apartments in Greensboro. Plaintiff received and credited to the account of Swaney checks from defendant made payable to plaintiff and Swaney in amounts that exceeded the amount of materials which plaintiff furnished Swaney. No employee of defendant with whom plaintiff communicated, with exception of C. G. Harris, had authority to guarantee the payment of any account of Swaney's or to direct disbursements of any funds from checks received by plaintiff from defendant. Defendant did not guarantee, orally or in writing, Swaney's account or to reimburse plaintiff for any funds disbursed by it to Swaney, and defendant is not indebted to plaintiff.

From the judgment adjudging that plaintiff recover nothing of defendant, plaintiff appealed.

*Joslin, Culbertson & Sedberry, by William Joslin, for plaintiff appellant.*

*Ragsdale & Kirschbaum, P.A., by William L. Ragsdale, for defendant appellee.*

BRITT, Judge.

Plaintiff states the questions presented on this appeal as follows:

(1) Did the Court err in excluding testimony of the statements made by defendant's job superintendents, purchasing agent and other employees contemporaneous with and explanatory of their actions in the performance of their duties?

(2) Did the Court err in failing to make any findings relating to the apparent authority of the defendant's agents (a) to promise that defendant would guarantee payment for sheetrock, if plaintiff would ship it to defendant's subcontractor, and (b) to direct disbursement of defendant's checks made payable jointly to the plaintiff and to Charles E. Swaney?

(3) Did the Court err in excluding testimony and in failing to find that the defendant, by inducing the plaintiff to ship sheetrock to defendant's subcontractor, had ratified its employee's promises that defendant would guarantee payment of the account?

Due to the interrelation of the questions and principles of law involved, we will not discuss the questions separately. It appears that plaintiff's theory is that Portefe and Clary had actual authority or apparent authority from defendant to carry out the arrangement between plaintiff and Swaney whereby plaintiff would refund certain portions of defendant's checks in order that Swaney could pay his labor, or that defendant ratified the arrangement; and that Nichols and Gilmore, as officials of defendant, had actual or apparent authority to authorize plaintiff to continue furnishing materials to Swaney in Greensboro after plaintiff learned that the Greensboro project was in trouble. By reason of that theory, plaintiff argues that statements and declarations made by Portefe, Clary, Nichols and Gilmore to plaintiff's representatives were erroneously excluded as evidence.

Builders Corp. v. Construction Co.

In 6 Strong, N. C. Index 2d, Principal and Agent § 4, p. 408, we find: "In the absence of proof of agency and that the act forming the basis of the action was within the scope of the agent's authority, evidence of acts, representations, or warranties made by the agent are incompetent as against the alleged principal." *See also Edgewood Knoll Apartments v. Braswell,* 239 N.C. 560, 80 S.E. 2d 653 (1954), *reh. den.,* 240 N.C. 760, 83 S.E. 2d 797 (1954).

Plaintiff's evidence not only failed to show that the acts forming the basis of the action were within the scope of the authority of defendant's Raleigh and Greensboro agents, the testimony of plaintiff's witness Harris positively showed that the acts were *not* within the authority of the agents. For that reason, as well as others unnecessary to state, the trial court properly excluded the proffered testimony.

In *Fleming v. Insurance Co.,* 269 N.C. 558, 561, 153 S.E. 2d 60 (1967), our Supreme Court quoted with approval from 3 Am. Jur. 2d, Agency § 78, as follows:

"A third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers. The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises."

The evidence in the instant case showed that defendant's main office was located in Virginia Beach, Virginia, and that its officers worked from that point. When defendant included plaintiff's name on its checks payable to Swaney, the burden was then on plaintiff to make a proper judgment as to the portion of the funds it could refund to Swaney and the portion it must retain to insure payment of its account. While plaintiff evidently relied heavily on Portefe and Clary to assist in making that judgment, the ultimate decisions were still on plaintiff.

The record indicates that Portefe cooperated with plaintiff very satisfactorily and that as long as he was the job superintendent Swaney's account stayed current. When Portefe warned plaintiff that the Greensboro project was in trouble, plaintiff was put on notice that it had to use great care in protecting itself. Plaintiff acted at its peril in relying on statements by Gilmore or Nichols that a written guarantee of the Swaney account would be obtained from the home office. The mere fact that the guarantee had to come from the home office indicated that neither Gilmore nor Nichols had authority to bind the defendant with respect to the account.

Finally, it is noted that the trial court not only granted defendant's Rule 41(b) motion for involuntary dismissal, but went further and made a determination on the merits of the case. The court found facts in favor of defendant and the findings of fact are fully supported by the evidence.

The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge ARNOLD concur.